Dorothy GOLUB, James T. Casten, Georgia Casten, his wife, Merla Small, A. M. Investment Corp., an Illinois Corporation on behalf of themselves and all other stockholders of GCI, Inc., formerly known as PPD Corporation, a New Jersey Corporation, on September 16, 1976, with the exception of the Individual defendants herein named, Appellants,

v.

PPD CORPORATION, a Delaware Corporation, ANTA Corporation, a Delaware Corporation, GCI, Inc., formerly known as PPD Corporation, a New Jersey Corporation, Gittlin Companies, Inc., a New Jersey Corporation, A. Sam Gittlin, B. Morton Gittlin, Robert B. Winkel, Robert G. Schwartz, Arthur G. Sills and Melvin S. Schaffer, Appellees.

No. 77–1687.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 12, 1978.

Decided May 11, 1978.

760

Frederick J. Dana of Gallop, Johnson, Godiner, Morganstern & Crebs, St. Louis, Mo., argued, for appellants; P. Terence Crebs, St. Louis, Mo., on brief.

Robert M. Lucy of Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo. (argued), Robert L. Laufer of Paul, Weiss, Rifkind, Wharton & Garrison, New York City (argued), and William F. Bavinger, III, St. Louis, Mo., on brief, for appellees.

Before BRIGHT and HENLEY, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

HENLEY, Circuit Judge.

This cause is before us on an appeal by plaintiffs from final orders of the United States District Court for the Eastern District of Missouri (The Honorable John F. Nangle, United States District Judge). The orders complained of dismissed without prejudice a suit brought by plaintiffs,[1] minority stockholders in a New Jersey corporation which is now known as GCI, Inc. and which was formerly known as PPD Corporation (Old PPD). The assets of Old PPD are now owned by another New Jersey corporation known as PPD Corporation (New PPD), all of the stock in which is owned by Anta Corporation, which is organized under Delaware law. The majority of the stock in GCI, Inc. or Old PPD is owned by Gittlin Companies, Inc. and by Robert G. Schwartz. All of the stock in Gittlin Companies, Inc. is owned by the Gittlin brothers, A. Sam Gittlin and B. Morton Gittlin.[2]

The complaint alleged violations of certain provisions of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a et seq. and of the statutory and common law of the State of New Jersey. Federal jurisdiction of the claim set out under the 1934 statute, hereinafter the Act, is based on 15 U.S.C. § 78aa. The jurisdiction of the district court with respect to the state claims which allege breach of fiduciary duty and commercial bribery is concededly pendent.

Plaintiffs' federal claim is based on alleged violations by the defendants, who controlled Old PPD and who now work for New PPD, of § 14(e) of the Act, 15 U.S.C. § 78n(e), and also of § 10(b), 15 U.S.C. § 78j(b), and its implementing Rule 10b-5 of the Securities & Exchange Commission, 17 C.F.R. § 240.10b-5. The alleged violations occurred in connection with a proxy statement issued in 1976 and relating to the proposed sale of the assets of Old PPD to the subsidiary of Anta Corporation which subsidiary, as indicated, is New PPD. The plaintiffs sought equitable, including declaratory, relief, and they brought the suit as a class action for themselves and for all other stockholders of Old PPD save the stockholders named as defendants in the case.

The defendants filed a motion to dismiss the complaint which they supported by documentary material that the district court considered. Judge Nangle treated the motion as one for summary judgment under Fed.R.Civ.P. 56 and granted it.[3]

* The Honorable Talbot Smith, United States Senior District Judge, Eastern District of Michigan, sitting by designation.

1. Dorothy M. Golub, James T. Casten, Georgia Casten, his wife, Merla Small and A. M. Investment Corp. Ms. Golub and the Castens are Missouri citizens; Merla Small is a citizen of Illinois, and A. M. Investment Corp. is an Illinois corporation.

2. GCI, Inc., Anta Corporation, New PPD, Gittlin Companies, Inc., A. Sam Gittlin and B. Morton Gittlin were named as defendants in the case. Other defendants are Robert B. Winkel

and Robert G. Schwartz, who has been mentioned. The complaint as to two additional defendants was voluntarily dismissed by the plaintiffs.

3. The standards that the district court was required to apply in passing on such a motion, and the standards that we are required to apply in reviewing the action of the district court are too familiar to require restating here. See, e. g., Ledwith v. Douglas, 568 F.2d 117 (8th Cir. 1978); Bellflower v. Pennise, 548 F.2d 776 (8th Cir. 1977); Percival v. General Motors Corp., 539 F.2d 1126 (8th Cir. 1976).

Plaintiffs filed a timely motion under Rule 59(e) requesting that they be given leave to file an amended complaint, a copy of which was attached to the motion. The motion was denied on August 2, 1977, and this appeal followed.

The proposed sale contemplated that the business of Old PPD would be continued without interruption by New PPD, and that top management personnel of Old PPD, including the individuals who owned, directly or indirectly, about 82% of the stock in Old PPD, would remain in the employ of New PPD and would continue to be paid the compensation that they were receiving from Old PPD. In addition, those individuals were to be paid substantial bonuses provided that they remained in the employ of New PPD, and provided that the operations of New PPD exceeded certain profitability targets.

It is the bonus feature of the sale about which plaintiffs complain. They contend that the "bonuses" are not additional compensation for services to be rendered to New PPD but are actually premiums or additional compensation to be paid to the controlling stockholders of Old PPD on account of their controlling stock ownership and willingness to make the sale of the assets.

In support of the federal cause of action that plaintiffs undertook to set out in the original complaint, it was alleged that the proxy statement issued by the management of Old PPD should have disclosed the "true" nature of the bonus provisions that have been mentioned, and that the court should adjudicate that the bonuses to be paid by New PPD belong to all of the stockholders of Old PPD.

As to the original complaint, the district court held that the facts alleged and relied on by the plaintiffs did not constitute a violation of §§ 10(b) or 14(e) of the Act or of Rule 10b–5 of the SEC. Having concluded that the federal claim would have to be dismissed, the district court then held that the pendent state claims should be dismissed also. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726–29, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

In the proposed amended complaint which the district court rejected plaintiffs abandoned their claim under § 14(e) of the Act, and shifted their base to § 14(a) and to Rule 14a–9 of the Commission, 17 C.F.R. § 240.14a–9. Plaintiffs continued to rely on § 10(b) and Rule 10b–5.

In refusing to permit the proposed amended complaint to be filed the district court noted that it contained allegations of scienter that were absent from the original complaint, but the court held that plaintiffs had still failed to set out any federal claim upon which relief could be granted.

Before going further, it will be helpful to look at the pertinent statutory and regulatory provisions involved in the case.

Section 10(b) of the Act and SEC Rule 10b–5 are designed to prevent the use of fraudulent, manipulative or deceptive devices in connection with the purchase or sale of securities where such transactions involve the use of instrumentalities of interstate commerce or of the mails or of the facilities of any national securities exchange. Rule 10b–5 is as follows:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

Section 14 does not deal directly with purchases or sales of securities. Rather, it deals specifically with proxies which may be solicited from holders of corporate stock. We are concerned here with § 14(a) and § 14(e), which are as follows:

(a) It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

\* \* \* \* \* \*

(e) It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation. The Commission shall, for the purposes of this subsection, by rules and regulations define, and prescribe means reasonably designed to prevent, such acts and practices as are fraudulent, deceptive, or manipulative.

Section 14(a) is implemented by Rule 14a–9 which, insofar as here relevant, is as follows:

(a) No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communications, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for

the same meeting or subject matter which has become false or misleading.

Returning to the facts, the record reflects that Old PPD had its principal place of business in Newark, New Jersey, and was engaged in the manufacture and sale of plastic and burlap wrappers and containers. It employed about 250 people. Its business had increased over the period between 1972 and 1976.

In 1976 ownership of Old PPD was evidenced by 900,000 shares of common stock having a par value of $1.00 per share. The stock was traded on the over-the-counter market at varying prices and about 18% of the stock was held by the investing public including the plaintiffs. Gittlin Companies, Inc., that is to say the Gittlin brothers, owned 600,000 or ⅔ of the stock. Robert G. Schwartz owned 138,600 shares. The plaintiffs collectively owned 4700 shares or about one-half of one per cent of the total stock in the company.

In 1976 A. Sam Gittlin was Honorary Chairman of the Board of Old PPD. He was also the Chairman of the Executive Committee and Treasurer of the corporation. B. Morton Gittlin was the active Chairman of the Board and Chief Executive Officer of the corporation. Schwartz was a Director of the company, and was also its Secretary and an executive Vice President. The defendant, Winkel, was President and Chief Executive Officer of the company and was a member of the Board of Directors.

A sales contract was executed by Old PPD and Anta on July 9, 1976 but was subject to the approval of the stockholders of the selling company. Anta agreed to pay the sum of $10,000,000.00, subject to downward adjustments, for the assets of Old PPD and also agreed to assume substantially all of the debts of that corporation. It was part of the agreement that the name of Old PPD would be changed to GCI, Inc.; that Anta would form New PPD; that the assets of Old PPD would pass to New PPD; and that the business of Old PPD would be continued without interruption. The contract also provided for the contingent payment of the bonuses which are the bone of contention in this case.

On August 27, 1976 all of the stockholders in Old PPD, including plaintiffs, were notified that a stockholders meeting would be held on September 16, and that in the course of the meeting the stockholders, or their proxies, would be called upon to vote on the question of whether the proposed sale of assets should be approved and carried out.

That notice was accompanied by a printed proxy statement in which the proposed sale, including the bonus aspect of it, was explained in great detail. The proxy statement candidly stated that since management was in favor of the sale and held 82% of the stock in Old PPD, the approval of the sale at the meeting was a foregone conclusion.

On September 11, 1976 plaintiffs addressed a written communication to Old PPD and to the individual defendants in which plaintiffs took the same position that they are taking in this case, namely, that the bonuses contemplated by the contract are not true bonuses but are premiums paid on account of stock ownership or are commercial bribes, and that the bonuses, when and if paid, will belong to the stockholders of Old PPD.[4]

The meeting was held as scheduled, and the contention of the plaintiffs was not accepted by the controlling stockholders.

When the question of the sale, including the bonus aspect of it, was put to a vote it was approved by 99.4% of the voting stock. Plaintiffs Golub and Small cast proxy votes against the proposal. The stock of Mr. and Mrs. Casten and A. M. Investment Corp. was not voted.

The sale was consummated in accordance with the contract. The business of Old PPD is being carried on by New PPD, and the prospective recipients of the bonuses are working for New PPD. It appears, however, that no bonuses have been paid since the profitability targets that would trigger the bonuses have not been met.

In dismissing the original complaint the district court found initially that the complaint was fatally defective in that it failed to allege the existence of required "scienter." See Ernst & Ernst v. Hochfelder, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976); Shull v. Dain, Kalman & Quail, Inc., 561 F.2d 152, 156 (8th Cir. 1977).

However, the district court went further and pointed out that the crux of the federal claim was that the proxy statement was false, manipulative and deceptive in that it failed to state "the true purpose and nature of the sale transaction," and in that it failed to state "that the bonuses were a reward or premium for the sale of the business." And, Judge Nangle held that such failures did not constitute a violation of § 10(b) or of Rule 10b–5 or of § 14(e) of the Act. He cited in support of that holding Santa Fe Industries, Inc. v. Green, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); Popkin v. Bishop, 464 F.2d 714 (2d Cir. 1972); Leighton v. American Telephone & Telegraph Co., 397 F.Supp. 133 (S.D.N.Y.1975); and Abramson v. Nytronics, Inc., 312 F.Supp. 519, 524 (S.D.N.Y.1970).

In its memorandum-order overruling the motion of the plaintiffs for leave to file their proposed amended complaint the district court stated that the proposed pleading adequately alleged scienter in connection with the contents and issuance of the proxy statement but was of the view that nothing else of substance would be added to the original complaint by the amended pleading, and that it. was insufficient to state a federal cause of action.

In seeking reversal plaintiffs concede that their original reliance on § 14(e) of the Act was misplaced. They earnestly contend, however, that the district court erred in refusing to permit the proposed amended complaint to be filed.[5] We disagree. We

---

4. We note that plaintiffs have never objected to New PPD paying the bonuses if they become due. Plaintiffs do claim that the conduct of the Gittlins, Winkel and Schwartz has been such as to estop them from claiming the bonuses, and that any bonuses payable to them should be paid ultimately to the "public" stockholders, including plaintiffs.

5. Plaintiffs suggest that the trial judge overlooked the fact that the proposed pleading in addition to alleging scienter also abandoned the § 14(e) claim and substituted for it the claim based on § 14(a) and SEC Rule 14a. We doubt that there was such an oversight, but we deem the matter to be immaterial.

hold that the action of the district court in dismissing the original complaint was proper, and we also hold that the district court did not err or abuse its discretion when it denied plaintiffs leave to file their amended complaint.

■ Section 10(b) and Rule 10b–5 and § 14(a) and (e) and Rule 14a–9 are obviously aimed at the same general evils in the field of corporate ownership, management and finance, are in pari materia and should be similarly construed. As a matter of fact, § 10(b) and Rule 10b–5 and § 14(a) and Rule 14a–9 tend to overlap because the fraudulent, manipulative or deceptive device that may be used in connection with the purchase or sale of securities in violation of Rule 10b–5 may be a deceptive, inaccurate or insufficient proxy statement prohibited by Rule 14a–9. Thus, a decision like that of the Supreme Court in *Santa Fe Industries v. Green, supra,* which is rendered in the context of a Rule 10b–5 suit may well be applicable in a case involving § 14(a) and Rule 14a–9. *See Browning Debenture Holders' Committee v. DASA Corp.,* 560 F.2d 1078, 1084 (2d Cir. 1977).

■ As the district court observed and as the cases hold, it was not the purpose of the federal security laws to provide a federal cause of action for stockholders who have been damaged by mere corporate mismanagement or breach of fiduciary duty by those in charge of the affairs of the corporation. Controversies in those areas have traditionally been the subject of litigation in the state courts, and federal legislation in the field of securities regulation was not designed to draw such controversies into the federal courts in the absence of diversity of citizenship and requisite amount in controversy. In the recent case of *St. Louis Union Trust Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 562 F.2d 1040, 1048 (8th Cir. 1977), this court said:

> Section 10(b) and Rule 10b–5 were not intended to bring within their ambit simple corporate mismanagement or every imaginable breach of fiduciary duty in connection with a securities transaction. The gravamen of a § 10(b) and Rule 10b–5 cause of action is fraud, viz. manip-

ulation or deception. *Ernst & Ernst v. Hochfelder* . . .; *Santa Fe Industries, Inc. v. Green* . . . .

■ As far as proxy statements are concerned, and regardless of whether the question arises in a suit brought under § 14(a) or (e) and implementing rules or whether it arises in a suit based on § 10(b) and Rule 10b–5, the federal purpose is served if the statement fully and fairly sets out such relevant and material facts as would enable a reasonably prudent stockholder to make an intelligent decision as to whether to grant the requested proxy or as to how he should vote on the questions mentioned in the proxy statement. *See Santa Fe Industries, Inc. v. Green, supra,* 430 U.S. at 474–77; *TSC Industries, Inc. v. Northway, Inc.,* 426 U.S. 438, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976); *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 381–85, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970); *J. I. Case Co. v. Borak,* 377 U.S. 426, 431–32, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964); *Cole v. Schenley Industries, Inc.,* 563 F.2d 35, 41–42 (2d Cir. 1977); *Popkin v. Bishop, supra,* 464 F.2d at 719–20.

In the case last cited it was said (464 F.2d at 719–20):

> . . . Section 10(b) of the Exchange Act and Rule 10b–5 are designed principally to impose a duty to disclose and inform rather than to become enmeshed in passing judgments on information elicited. (Citations omitted.) This design has special relevance to merger transactions that, under state law, must be subjected to shareholder approval. In the context of such transactions, if federal law ensures that shareholder approval is fairly sought and freely given, the principal federal interest is at an end. Underlying questions of the wisdom of such transactions or even their fairness become tangential at best to federal regulation. (Citation omitted.) And when what is sought is injunctive relief, a federal court of equity should regard this consideration as controlling. Thus, in the present case, we believe that once appellant admitted that defendants fully and fairly disclosed all material facts sur-

rounding the merger to all interested parties, including the minority shareholders, appellant's claim under Rule 10b–5 for injunctive relief must fall.

To abstract or analyze the relevant portions of the proxy statement issued by the management of Old PPD would involve little but a repetition of what has been said already in this opinion. We are satisfied that the proxy statement, when considered in the light of the principles that have been stated, was fully adequate to meet the requirements of the Act and of the rules promulgated thereunder.

Actually, the plaintiffs are not complaining about any absence of facts in the proxy statement. Their complaint is that those who prepared the statement did not "disclose" what the plaintiffs say was the true motivation of Old PPD's management in selling the assets of the company, and did not characterize the bonus aspect of the transaction as plaintiffs would have it characterized. Under the Act and regulations plaintiffs were not entitled to have such a "disclosure" or such a characterization.

It is quite possible that plaintiffs may have a claim against the defendants or some of them under applicable state law. If so, plaintiffs are free to pursue that claim in an appropriate forum. All that the district court held, and all that we hold, is that plaintiffs have no federal cause of action under the Act.

Affirmed.