Gerson B. SELK, Eleanore Selk, Ronald H. Weinblatt and Robert S. Krauser, Appellants,

v.

ST. PAUL AMMONIA PRODUCTS, INC., N–Ren Corporation, H. H. Hamilton, George C. Van Nostrand, George W. Blout, Jerome C. Hunsaker, Jr., Kenneth D. Jarvis, George L. Polley, William Gardner and Edward Stegman, Appellees.

No. 78–1644.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 10, 1979.

Decided April 27, 1979.

**636**

I. Stephen Rabin, of Rabin & Silverman, New York City, for appellant; McCallum, Gallagher, McCollum & NYstrom, Ltd., Minneapolis, Minn., on brief.

Peter W. Sipkins, Briggs & Morgan, St. Paul, Minn., for appellee; Oppenheimer, Wolff, Foster, Shepard & Donnelly, St. Paul, Minn., on brief.

Before GIBSON, Chief Judge, ROSS, Circuit Judge, and VAN SICKLE, District Judge.[*]

GIBSON, Chief Judge.

This appeal is from a judgment of the District Court[1] dismissing the claims of the plaintiffs based on violations of sections 10(b) and 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78n(a), contending the proxy statement issued with respect to a merger between a parent corporation and its subsidiary was false and misleading. The court concluded that there was no just reason for delay, and entered judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. The District Court retained jurisdiction of other claims based on various state law theories. After carefully considering the record and the briefs and arguments of the parties, we affirm the judgment of dismissal.

According to the second amended complaint, Gerson B. Selk and Eleanore Selk are residents of Chicago, Illinois, and, since March 20, 1974, have been joint owners of 500 shares of the common stock of St. Paul Ammonia Products, Inc. (St. Paul). Donald Weinblatt is also an Illinois resident, and, since October 23, 1973, has owned 500 shares of the common stock of St. Paul. Robert Krauser is a New York resident, and since 1974 has owned 100 shares of St. Paul common stock. N–Ren Corporation is a Delaware corporation with principal offices in Cincinnati, Ohio. It is engaged in the production and marketing of nitrogen-base fertilizer products and industrial chemicals. From October 15, 1973, to January 1974, N–Ren owned and controlled approximately 66.9% of the outstanding common stock and 35.3% of the outstanding preferred stock of St. Paul. Through this stock ownership, N–Ren was able to elect all five of the directors of St. Paul. Officers and employees of N–Ren constituted a majority of the members of the board of directors of St. Paul.

St. Paul was a Minnesota corporation with principal offices in Pine Bend, Minnesota. During the years 1967 through 1973 inclusive, St. Paul had annual losses averaging over $1 million. However, due to various factors, including a rise in the price of fertilizer, St. Paul earned $10 million for the year ending June 30, 1974; and for the year ending June 30, 1975, St. Paul earned $30 million before income taxes and extraordinary items. Pursuant to an agreement dated January 24, 1974, N–Ren received four million shares of St. Paul common stock in return for used equipment valued

---

\* The Honorable Bruce M. Van Sickle, United States District Judge, District of North Dakota, sitting by designation.

1. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

at $1.25 million, as well as certain other agreements. The newly issued stock was valued at sixty cents a share. It is disputed whether that equipment was in fact of any value to St. Paul. The appellants allege this used equipment was worthless. This exchange of used equipment of dubious value for four million shares of stock valued at sixty cents a share gave N–Ren over 80% control of St. Paul. However, only a 66⅔% affirmative vote was necessary for a merger under Minnesota law. During the years in question, N–Ren purchased fertilizer products from St. Paul and received discounts. The extent of those discounts is disputed.

According to the allegations in the complaint, the improved financial position of St. Paul prompted N–Ren, with the assistance of the directors of St. Paul, to propose a merger of St. Paul into N–Ren, with the minority shareholders to receive a payment of $2.65 per share. A Notice of Special Meeting of Shareholders and a Proxy Statement, dated October 7, 1975, were sent to shareholders on or about October 10, 1975, in advance of a special meeting of shareholders to be held on October 24, 1975, to act on the proposed merger. Ultimately, over 99% of all voting shares of St. Paul and over 95% of the minority shareholders apparently approved the merger.

In October 1975, Gerson and Eleanore Selk commenced an action for injunctive relief in the United States District Court for the Northern District of Illinois. This was denied and an appeal to the Seventh Circuit was unsuccessful. Following that, the Selks amended their complaint to seek damages. At the same time, Robert Krauser was bringing an action seeking damages in the District of Minnesota. Eventually, the Illinois action was transferred and consolidated with the pending action in Minnesota. An amended and unified complaint was filed in the District of Minnesota on behalf of the named plaintiffs as well as the class of persons consisting of former minority shareholders of St. Paul. Thereafter, on March 2, 1978, the defendants moved to dismiss the amended and unified complaint. On May 26, 1978, permission to file a second

amended complaint was granted. The second amended complaint eliminated any reliance on section 17(a) of the Securities Act of 1933 but retained the causes of action based on an allegedly false proxy statement and on theories of recovery under state law, stating that the merger lacked a business purpose, was a "freeze-out" of the public, and that the price paid minority shareholders was too low.

In a memorandum opinion dated June 29, 1978, the District Court dismissed the claims based on the federal securities laws. It held that since N–Ren owned approximately 80% of the common stock and 100% of the outstanding preferred stock of St. Paul at the time of the merger, the votes of the minority shareholders were irrelevant to the accomplishment of the merger. Therefore, in the District Court's view, any misstatements in the proxy lacked any causal relationship to the merger outcome, and recovery was not permitted. The District Court also ruled that under applicable Eighth Circuit precedent, the allegation and showing of reliance is necessary to recover where the case alleges "omissions in the nature of misrepresentations (misleading statements, half-truths)." The court concluded that in this case reliance was not alleged and the complaint did not set forth facts establishing reliance. Finally, the District Court concluded that the plaintiffs were not entitled to "disclosure" of the true motivation of corporate management and were not entitled to have the proxy characterize disclosed pre-merger transactions in any particular way. In the District Court's view, the present complaint sought such characterization and disclosure and therefore failed to state a cause of action under the Securities Exchange Act.

▪ Before turning to the merits of the appeal, it is necessary to consider whether this court has jurisdiction to hear this appeal. St. Paul and the other appellees urge that the second amended complaint states a single set of operative facts as a basis for the various alleged legal theories for recovery and thus entry of final judgment under

Rule 54(b) Fed.R.Civ.P. was improper. They rely on *McIntyre v. First National Bank of Cincinnati,* 585 F.2d 190 (6th Cir. 1978), and *McNellis v. Merchants National Bank and Trust Co. of Syracuse,* 385 F.2d 916 (2d Cir. 1967). Neither of those cases is determinative here. *McIntyre* involved entry of a final judgment in favor of one defendant in a securities case, while proceedings continued against closely related co-defendants. *McNellis* involved various theories of recovery in a bankruptcy action growing out of an allegedly fraudulent transaction. We have carefully considered the jurisdictional question and are not persuaded that the District Court erred in certifying this as a final judgment under Rule 54(b). *Sears, Roebuck & Co. v. Mackey,* 351 U.S. 427, 76 S.Ct. 895, 100 L.Ed. 1297 (1956); *Cold Metal Process Co. v. United Engineering & Foundry Co.,* 351 U.S. 445, 76 S.Ct. 904, 100 L.Ed. 1311 (1956). We have jurisdiction to decide the merits of this appeal.

The District Court held that where a merger could have been accomplished without the approval of any minority shareholder, causation was absent. In reaching this result it decided a question reserved by the Supreme Court in *Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 385, n.7, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). In *Mills,* the Supreme Court held that the Seventh Circuit had been in error when it required, under section 14(a) of the Securities Exchange Act of 1934, a showing of causation in addition to the materiality of a false or misleading proxy statement. The votes of some minority shareholders were required to accomplish the merger of Electric Auto-Lite Company into Mergenthaler Linotype Company. The Supreme Court held that proof of materiality dismissed any need for proof of causation in that context. It recognized that some federal courts had applied the same rule in cases where the merger would have been accomplished without the votes of any minority shareholder.

■ Since *Mills* was decided, we specifically declined to decide the same question in *Polin v. Conductron Corp.,* 552 F.2d 797, 813 n.55 (8th Cir.), *cert. denied,* 434 U.S. 857, 98 S.Ct. 178, 54 L.Ed.2d 129 (1977). We again find it unnecessary definitively to decide this issue because we affirm the District Court on one of the alternate bases of its decision. We do note, however, that of those courts which have considered the matter, two circuit courts of appeals have determined that ability to effectuate a corporate act independently of the votes of minority shareholders does not insulate a company from liability for a materially false or misleading proxy statement. *Schlick v. Penn Dixie Cement Corp.,* 507 F.2d 374, 382–83 (2d Cir. 1974), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975); *Swanson v. American Consumer Industries, Inc.,* 415 F.2d 1326, 1331–32 (7th Cir. 1973).[2] Nor do we think it should. The purpose, spirit and intent of the Securities Exchange Act is to compel full and fair disclosure. Erroneous information could affect a minority stockholder's seeking other possible relief, including appraisal rights, and also serve as cover for common-law fraud.

■ Similarly, we do not find compelling support for finding the lack of allegations of reliance to be a basis for upholding the District Court decision. The District Court relied on *Vervaecke v. Chiles, Heider & Co., Inc.,* 578 F.2d 713 (8th Cir. 1978). *Vervaecke* involved an alleged misrepresentation in a prospectus connected with the issuance of bonds; it did not involve alleged misrepresentations in proxy solicitation materials. Whether that distinction is determinative we do not decide. However, the Supreme Court's opinion in *Mills* states that a finding of materiality embodies a finding that the misstatement or omission "might have been considered important by a reasonable shareholder who was in the process of deciding how to vote." 396 U.S. at 384, 90 S.Ct. at 621. *Mills* considered this to be a sufficient showing of causation where the

---

2. The parties have cited only one case holding the contrary position. *Ross v. Longchamps,* 336 F.Supp. 434, 440 (E.D.Mo.1971).

proxy solicitation "was an essential link in the accomplishment of the transaction." 396 U.S. at 385, 90 S.Ct. at 622. After *Mills,* we are not satisfied that a separate showing of reliance on a material misrepresentation in proxy solicitation materials can be required.

 The third basis for the District Court's action in dismissing the complaint is amply supported by a prior interpretation of the Securities Exchange Act in this court. In *Golub v. P.P.D. Corp.,* 576 F.2d 759 (8th Cir. 1978), this court upheld the dismissal of a suit alleging violations of the Securities Exchange Act of 1934 in connection with a proxy statement relating to the proposed sale of the assets of a corporation. In that case, we carefully reviewed the content and purpose of both section 10(b) and section 14(a) of the Act. The opinion in *Golub* concluded by noting that the plaintiffs might have a claim against the defendants under state law, but held that no cause of action was stated under the Securities Exchange Act of 1934. We held:

> Actually, the plaintiffs are not complaining about any absence of facts in the proxy statement. Their complaint is that those who prepared the statement did not "disclose" what the plaintiffs say was the true motivation of Old P.P.D.'s management in selling the assets of the company, and did not characterize the bonus aspect of the transaction as plaintiffs would have it characterized. Under the Act and regulations plaintiffs were not entitled to have such a "disclosure" or such a characterization.

576 F.2d at 765. We believe that the same rule applies to the complaint filed by the plaintiffs in this case.

Our review of the complaint and the proxy statement convinces us that the District Court was correct when it concluded that the specific "non-disclosures" itemized in the second amended complaint were either "(1) pieces of information which *are* contained in the proxy statement, or (2) plaintiffs' characterizations of the premerger transactions, or (3) a combination thereof." We have considered four items both alleged in the complaint and referred to in the plaintiffs' briefs. In each instance the facts disclosed in the proxy fully informed the proxy recipient of all information required by the Act. It would serve no purpose for us to prolong this opinion by considering those items individually. The federal securities laws do not cover all instances of corporate mismanagement or breaches of fiduciary duty. *Golub v. P.P.D. Corp.,* 576 F.2d 759 (8th Cir. 1978). Breaches of common-law obligations are actionable in state courts and may be addressed under certain circumstances under the pendent jurisdiction of the federal courts.

ROSS, Circuit Judge, concurs only in the result.

The judgment of the District Court is affirmed.