741 F.2d 234
 Fed. Sec. L. Rep. P 91,637
Evelyn FELDBAUM, Appellant,
v.
AVON PRODUCTS, INC., AVP Holdings, Inc., Mallinckrodt, Inc.,
Raymond F. Bentele, Harold E. Thayer, George H. Capps,
William D. Phillips, George Putnam, Harry W. Kroeger,
William H. Danforth, August H. Homeyer, William L. Davis,
Fletcher N. Anderson, and John L. Ufheil, Appellees.
 No. 83-2439.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 17, 1984.
Decided Aug. 24, 1984.
 
 Edwin D. Akers, Jr., Alan G. Johnson, Gallop, Johnson & Newman, St. Louis, Mo., Stanley Nemser, Marian R. Probst, Wolf, Popper, Ross, Wolf & Jones, New York City, Richard D. Greenfield, Donald B. Lewis, Greenfield & Chimicles, Bala Cynwyd, Pa., for appellant.
 Ronald S. Rolfe, Richard C. Raymond, New York City, Robert S. Allen, Michael A. Vitale, Lewis & Rice, St. Louis, Mo., for appellees Avon Products, Inc. and AVP Holdings, Inc.; Cravath, Swaine & Moore, New York City, Thomas J. Guilfoil, Jim J. Shoemake, G. Lane Roberts, Jr., Guilfoil Petzall & Shoemake, St. Louis, Mo., Michael W. Mitchell, Skadden, Arps, Slate, Meagher & Flom, New York City, of counsel.
 Before ROSS, BENNETT* and ARNOLD, Circuit Judges.
 ARNOLD, Circuit Judge.
 
 
 1
 Evelyn Feldbaum, the owner of 150 shares of common stock of Mallinckrodt, Inc., filed this action in federal court on January 13, 1982. The complaint alleges violations of the Securities Exchange Act of 1934 by Avon Products, Inc. (Avon), AVP Holdings, Inc. (AVP), Mallinckrodt, and officers and board members of Mallinckrodt. The District Court[1] dismissed the complaint for failure to state a claim upon which relief can be granted. We affirm. We hold that the allegations in the complaint of material omissions or misrepresentations in a tender offer by Avon and AVP for Mallinckrodt stock do not state a claim, and that a so-called "lock-up option" granted by Mallinckrodt to AVP is not a manipulative practice or device forbidden by the federal securities laws.
 
 I.
 
 2
 Mallinckrodt is involved in the development, production, marketing, and distribution of chemicals used in the health-care, chemical, and food industries. In December 1981, Mallinckrodt and Avon announced an agreement to merge. By the terms of the agreement, AVP, a wholly owned subsidiary of Avon, would acquire 32 per cent of Mallinckrodt stock by tender offer, and 17 per cent from a trust formed previously for the benefit of Washington and Harvard Universities. (A committee of four Mallinckrodt directors had voting control of this stock.) AVP would pay $50 per share for this 49 per cent. and would complete the merger by acquiring the remaining 51 per cent. of the stock by exchanging Avon stock for Mallinckrodt stock. The exchange ratio would be computed by taking the average closing price of Avon common stock during the 22 trading days preceding the third calendar day before the shareholders' meeting (ultimately held on March 8, 1982) and dividing it into $50. It was agreed that in no event would the average price of Avon for this purpose exceed $35 or be less than $30.[2] The agreement also granted AVP an option to buy up to 3.6 million shares of Mallinckrodt's authorized but unissued common stock at $50 per share.[3] Mallinckrodt officers were to remain in office after the merger and would be joined on the Board by two directors elected from representatives of Avon. The President and Chairman of the Board of Mallinckrodt (defendants Bentele and Thayer) were to join the Avon Board.
 
 
 3
 The Mallinckrodt Board recommended acceptance of the tender offer by the shareholders. On January 11, 1982, AVP accepted 32 per cent. of Mallinckrodt stock for $50 per share, and the Mallinckrodt shareholders approved the merger at their meeting on March 8. The market value of Avon stock fell below the $30 floor set by the terms of the merger agreement, so that when Mallinckrodt shares were exchanged for shares of Avon, shareholders received only about $42 worth of Avon stock for each share of Mallinckrodt.
 
 
 4
 The plaintiff claims that Sections 14(e)[4] and 10(b)[5] of the Securities Exchange Act of 1934 were violated. She alleges various misrepresentations, including that defendants knew there was a "strong likelihood" that the market value of Avon stock would decline during the 22 trading days used to determine the exchange ratio, but failed to disclose that knowledge to the shareholders in the solicitation materials. She also alleges the option granted to AVP is a manipulative device proscribed by Section 14(e) and Rule 10b-5.[6] The complaint contains other claims of material nondisclosure and breach of fiduciary duty. The District Court dismissed her claims in their entirety, and we affirm that judgment. We do not have a great deal to add to the District Court's comprehensive opinion.
 
 II.
 
 5
 In the tender-offer situation, federal securities law requires the accurate disclosure of material facts--"facts 'which in reasonable or objective contemplation might affect the value of the corporation's stock or securities ...' to the seller," Myzel v. Fields, 386 F.2d 718, 734 (8th Cir.1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968) (quoting Kohler v. Kohler Co., 319 F.2d 634, 642 (7th Cir.1963)). The plaintiff alleges that the defendants knew that the market price of Avon would probably decrease before the exchange of Avon and Mallinckrodt shares in the merger, and failed to disclose this "fact" in the tender offer. But the Offer to Purchase did disclose that a dilution of the per-share earnings of Avon would result from the tender offer, that Avon would borrow heavily to execute the tender offer, and that Avon's earnings were down in the first nine months of 1981. It requires no great amount of sophistication to infer from these disclosed facts that a decline in the price of Avon was probable. The law does not require us to assume that readers of tender offers are entirely devoid of common sense. Such an extension of federal law would be unwarranted. In merger transactions, "if federal law ensures that shareholder approval is fairly sought and freely given, the principal federal interest is at an end. Underlying questions of the wisdom of such transactions or even their fairness become tangential at best." Golub v. PPD Corp., 576 F.2d 759, 764 (8th Cir.1978) (quoting Popkin v. Bishop, 464 F.2d 714, 720 (2d Cir.1972)). Therefore, we hold the District Court was correct in its dismissal of plaintiff's claim that defendants failed to disclose material facts.[7]
 
 
 6
 We also agree with the District Court's conclusion that the option granted to AVP is not a manipulative device prohibited by 14(e), 10(b), or 10b-5.[8] The Supreme Court has noted that the purpose of the Williams Act, which added Section 14(e) to the Securities Exchange Act, is to protect shareholders confronted with a cash tender offer by providing them with adequate information. E.g., Piper v. Chris-Craft Industries, Inc., 430 U.S. 1, 35, 97 S.Ct. 926, 946, 51 L.Ed.2d 124 (1977); Rondeau v. Mosinee Paper Corp., 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975). The federal purpose is served once material facts are revealed so that the shareholder has enough information to make an intelligent decision. Golub, supra, 576 F.2d at 764. The plaintiff does not allege that material information about this option was withheld or distorted. Instead she urges that we adopt the rationale of the Sixth Circuit in Mobil Corp. v. Marathon Oil Corp., 669 F.2d 366 (6th Cir.1981), which held that options to purchase treasury shares and an oil field were manipulative acts under Section 14(e). However, we find the reasoning of the Second Circuit in Buffalo Forge Co. v. Ogden Corp., 717 F.2d 757 (2d Cir.), cert. denied, --- U.S. ----, 104 S.Ct. 550, 78 L.Ed.2d 724 (1983), more persuasive. In Buffalo Forge the plaintiff alleged in part that the sale of treasury shares and the grant of an option to buy additional treasury shares were manipulative acts under Section 14(e). In affirming the District Court's dismissal of the claim, the court considered the purpose of the Williams Act and found misrepresentation to be a necessary element of a Section 14(e) cause of action. Id. at 760. Accord, Schreiber v. Burlington Northern, Inc., 731 F.2d 163, 166 (3d Cir.1984); Data Probe Acquisition Corp. v. Datatab, Inc., 722 F.2d 1, 4 (2d Cir.1983), cert. denied, --- U.S. ----, 104 St.Ct. 1326, 79 L.Ed.2d 722 (1984); Dan River Inc. v. Icahn, 701 F.2d 278, 285 (4th Cir.1983); Panter v. Marshall Field & Co., 646 F.2d 271, 283 (7th Cir.), cert. denied, 454 U.S. 1092, 102 S.Ct. 658, 70 L.Ed.2d 631 (1981).
 
 
 7
 The Supreme Court has defined manipulation as a "term of art ... connot[ing] intentional ... conduct designed to deceive or defraud investors by ... artificially affecting the price of securities." Ernst & Ernst v. Hochfelder, 425 U.S. 185, 199, 96 S.Ct. 1375, 1384, 47 L.Ed.2d 668 (1976) (footnote omitted). Here, there is no allegation of deception in the granting of this option or in the disclosure of the option to the shareholders. We hold that some element of deception or misrepresentation is essential to a valid Section 14(e) claim. Where the claim is breach of fiduciary duty without more, the plaintiff's remedy lies under state law.
 
 
 8
 The District Court, having held that the complaint failed to state claims under federal law, also dismissed plaintiff's pendent state-law claims, which alleged, among other things, a breach of fiduciary duty on the part of the defendant officers and directors. We express no view on the merits of these claims. Their dismissal is without prejudice to the plaintiff's right to pursue them in the state courts.
 
 
 9
 Affirmed.
 
 
 
 *
 The Hon. Marion T. Bennett, United States Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 The Hon. Edward L. Filippine, United States District Judge for the Eastern District of Missouri
 
 
 [2]
 Therefore, each Mallinckrodt shareholder would receive between 1.429 and 1.667 shares of Avon for each share of Mallinckrodt
 
 
 [3]
 This type of option is known as a lock-up option and results in a competitive advantage for the favored suitor. The number of shares involved in this option, which was never executed, is about 25 per cent. of the shares outstanding on December 10, 1981
 
 
 [4]
 15 U.S.C. Sec. 78n(e) (1982). Section 14(e) provides in pertinent part:
 (e) It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading, or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer or request or invitation for tenders, or any solicitation of security holders in opposition to or in favor of any such offer, request, or invitation.
 
 
 [5]
 15 U.S.C. Sec. 78j(b) (1982). Section 10(b) provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange--
 (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.
 
 
 [6]
 17 C.F.R. Sec. 240.10b-5 (1983). Rule 10b-5, promulgated by the SEC under the authority of 10(b) provides:
 It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
 (a) To employ any device, scheme, or artifice to defraud,
 (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
 (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
 in connection with the purchase or sale of any security.
 
 
 [7]
 The District Court's opinion discusses the other deficiencies in the tender offer alleged in the complaint, and we have nothing to add on those points
 
 
 [8]
 The significant difference between 10b-5 and 14(e) is that 10b-5 covers purchases and sales of securities while 14(e) applies to tender offers. Our discussion of 14(e) also applies to the allegation that 10(b) and 10b-5 were violated