PAGEL, INC.; Jack W. Pagel; and Duane A. Markus, Petitioners,

v.

SECURITIES AND EXCHANGE COMMISSION, Respondent.

Nos. 85–5295, 85–5300.

United States Court of Appeals, Eighth Circuit.

Submitted May 12, 1986.

Decided Oct. 22, 1986.

Richard B. Solum and Jan Stuurmans, Minneapolis, Minn., for petitioners.

Catherine T. Dixon, Washington, D.C., for respondent.

Before ARNOLD, FAGG and WOLL-MAN, Circuit Judges.

WOLLMAN, Circuit Judge.

Pagel, Inc., a Minneapolis registered broker-dealer in securities, its president and sole stockholder, Jack W. Pagel, and its executive vice president, Duane A. Markus, petition for review of a final order of the Securities and Exchange Commission (Commission) revoking the broker-dealer registration of Pagel, Inc., and barring Pagel and Markus from association with any broker or dealer. We affirm the Commission's order.

Pagel, Inc., served as the principal underwriter for the first public offering of the securities of FilmTec Corporation in March 1979.[1] Pursuant to the underwriting agreement, the firm was to underwrite the sale of 320,000 shares of FilmTec stock at $3.25 per share, with an option to purchase an additional 32,000 shares should custom- er allocations exceed the original number of shares. Retaining the balance for itself, the firm allotted only 34,800 shares of the issue to other dealers. On March 26, 1979, Pagel, Inc., began offering FilmTec at 3¼. The offering was ostensibly completed on March 29, 1979, when the firm exercised its over-allotment option, increasing its share of the offering to 317,200 shares, or over 90% of the total issue.

On March 30, 1979, aftermarket trading began, with the firm's opening prices for FilmTec stock set at 4⅜ bid and 4⅝ offered, increases of 35% and 42%, respectively, over the offering price of 3¼. At this time, Pagel, Inc., began to maintain a "long" position in Filmtec, or an excess of purchases from its customers over sales to them, which would continue until March 1980. The firm's Filmtec trading activities were all at the direction of Pagel and Markus. Within the first fifteen minutes of trading, the firm's customers sold 49,300 shares of FilmTec to the firm and purchased 39,205 shares, including 7,650 shares purchased by Markus through nominees, and the firm raised the price of Film-Tec to 5¾ bid and 7 offered. By the day's closing, Pagel, Inc., had purchased a total of 70,455 shares from its customers and sold a total of 56,830 shares, charging as much as 7¾.

During the next seven trading days, April 2–10, 1979, the firm's customers sold 88,987 shares and purchased 66,680 shares, a 33% excess of sales over purchases. By April 10, 1979, the firm's long position had increased to 48,607 shares, but seven other dealers were short FilmTec stock in the amount of 4,750 shares. Pagel, Inc., and its customers cumulatively owned 329,875 shares, or 93.7% of the 352,000–share public offering. Despite the lack of customer demand, evidenced by the excess of customers' sales over purchases, Pagel, Inc., was offering FilmTec at a high of 10½, an increase of more than 300% above the offering price of 3¼.

---

1. The facts are stated in detail in the opinion of the Commission, *In re Pagel, Inc.,* Exchange Act Release No. 22,280, [1985–1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 83,909 (Aug. 1, 1985), and in even greater detail in the initial decision of the Administrative Law Judge. We will not repeat them with equivalent elaboration here.

Between April 11, 1979, and the end of February 1980, Pagel, Inc., continued to dominate the FilmTec market, and the stock remained at a fairly constant price level. Throughout March 1980, however, the firm steadily lowered its prices for FilmTec, this despite the fact that customers' purchases exceeded customers' sales for the month. The firm's prices for Film-Tec declined from 14 bid and 15½ offered on March 3, to 7 bid and 8½ offered on March 31, a 50% drop in price in one month. On March 21, 1980, with a bonus the firm gave to him, Pagel purchased 32,000 shares of FilmTec from the firm, apparently its entire inventory, at a price of 7½. The sale enabled Pagel, Inc., to realize a $180,000 tax loss at the close of its fiscal year on March 31, offsetting the firm's trading profits. Furthermore, Pagel acquired stock with a potential for realizing long-term capital gains.

On June 9, 1982, the Commission ordered a public proceeding to determine whether petitioners [2] had violated provisions of the securities laws and to determine what remedial action, if any, would be appropriate. An evidentiary hearing was held before an Administrative Law Judge (ALJ) on December 13–21, 1982. On August 29, 1983, the ALJ found that Pagel, Inc., Pagel, and Markus had violated the fraud, manipulation, and record keeping provisions of the securities laws by: (1) manipulating the price of FilmTec stock in the initial eight days of public trading; (2) manipulating the price of FilmTec stock in March 1980 to secure significant tax and investment benefits; (3) purchasing FilmTec stock within the period of distribution; and (4) failing to maintain records identifying the beneficial ownership of nominee accounts through which Pagel and Markus traded. The ALJ recommended the revocation of the firm's broker-dealer registration and the barring of Pagel and Markus from association with any broker or dealer.

Petitioners appealed the ALJ's decision to the Commission, which held that petitioners had violated the prohibitions of fraud and manipulation in securities dealings contained in section 17(a) of the Securities Act of 1933,[3] and section 10(b) of the Securities Exchange Act of 1934,[4] and Rule 10b–5 thereunder.[5] The Commission also

---

2. We refer to Pagel, Inc., Pagel, and Markus collectively as "petitioners."

3. 15 U.S.C. § 77q(a) (1982). Section 17(a) provides:
    (a) It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—
    (1) to employ any device, scheme, or artifice to defraud, or
    (2) to obtain money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
    (3) to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

4. 15 U.S.C. § 78j(b) (1982). Section 10(b) provides:
    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

&ast; &ast; &ast; &ast; &ast; &ast;

    (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

5. 17 C.F.R. § 240.10b–5 (1986). Rule 10b–5 provides:
    It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
    (a) To employ any device, scheme, or artifice to defraud,
    (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
    (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,
    in connection with the purchase or sale of any security.

found that petitioners had violated the provisions of Rule 10b–6, 17 C.F.R. § 240.-10b–6 (1986), prohibiting the purchase of securities by an underwriter participating in a distribution of the securities. Additionally, the Commission found that Pagel, Inc., had violated, and Pagel and Markus aided and abetted its violations of, the record keeping provisions of section 17(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78q(a) (1982), and Rule 17a–3(a)(9) thereunder, 17 C.F.R. § 240.17a–3(a)(9) (1986). The Commission approved the sanctions imposed by the ALJ. *In re Pagel, Inc.,* Exchange Act Release No. 22,280, [1985–1986 Transfer Binder] Fed.Sec.L. Rep. (CCH) ¶ 83,909 (Aug. 1, 1985).

█ Petitioners challenge the sufficiency of the evidence supporting the Commission's findings with respect to the violations of section 17(a) of the Securities Act, section 10(b) of the Securities Exchange Act, and Rule 10b–5. They also argue that the Commission erred in drawing an adverse inference from the individual petitioners' invocation of their fifth amendment privilege against self-incrimination and in approving the ALJ's exclusion of expert testimony. Petitioners argue further that the Commission imposed excessive sanctions.[6]

First, petitioners argue that the evidence does not support the Commission's finding of manipulation of the market in FilmTec stock. They contend that "regardless of how much prominence [Pagel, Inc.] had in the making of the FilmTec market during the periods in question and the effect its trades had on price, there was no unlawful purpose, intent to induce others to act, artificial prices, or prices based on factors other than legitimate ones." Petitioners' (Pagel, Inc.'s and Pagel's) Brief at 12 (footnote omitted).

Our review of the Commission's findings, pursuant to the Securities Act, 15 U.S.C.

§ 77i (1982), and the Securities Exchange Act, 15 U.S.C. § 78y (1982), is limited to whether the findings are supported by substantial evidence on the record as a whole. *Brickner v. Federal Deposit Insurance Corp.,* 747 F.2d 1198, 1201 n. 4 (8th Cir. 1984); *Edward J. Mawod & Co. v. Securities & Exchange Commission,* 591 F.2d 588, 593 (10th Cir.1979); *Capital Funds, Inc. v. Securities & Exchange Commission,* 348 F.2d 582, 585 (8th Cir.1965); *Barnett v. United States,* 319 F.2d 340, 343 (8th Cir.1963). Our task is not to weigh the evidence, "but only to determine that there is in the record ' "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' " *Steadman v. Securities & Exchange Commission,* 450 U.S. 91, 99, 101 S.Ct. 999, 1006, 67 L.Ed.2d 69 (1981) (quoting *Consolo v. Federal Maritime Commission,* 383 U.S. 607, 620, 86 S.Ct. 1018, 1026, 16 L.Ed.2d 131 (1966) (quoting *Consolidated Edison Co. v. National Labor Relations Board,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938))).

In connection with the securities markets, manipulation is a "term of art * * * connot[ing] intentional or willful conduct designed to deceive or defraud investors by controlling or artificially affecting the price of securities." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199, 96 S.Ct. 1375, 1383, 47 L.Ed.2d 668 (1976); *see Feldbaum v. Avon Products, Inc.,* 741 F.2d 234, 237 (8th Cir.1984). As this case illustrates, there is room for considerable disagreement whether manipulation may be present on a given set of facts. The Commission, however, did not find petitioners liable solely because of their dominant position in the FilmTec market. Rather, it determined that petitioners had manipulated the market by abusing their position both during the first eight days of aftermarket trading and in March 1980. The Commission stated:

---

**6.** Petitioners contested the Commission's findings on the Rule 10b–6 and Rule 17a–3(a)(9) violations for the first time in their reply brief, arguing that the violations of these rules were "technical" and not grounds for the sanctions imposed. Petitioners' (Pagel, Inc.'s and Pagel's) Reply Brief at 21. We believe that the Commission's findings on these violations were supported by substantial evidence. We discuss the sanctions issue later in this opinion.

When individuals occupying a dominant market position engage in a scheme to distort the price of a security for their own benefit, they violate the securities laws by perpetrating a fraud on all public investors. In addition, their failure to disclose that market prices are being manipulated not only constitutes an element of a scheme to defraud, but is also a material omission of fact in the offer and sale of securities.

*In re Pagel, Inc., supra,* ¶ 83,909, at 87,-752. The Commission primarily relied on evidence of the price movements of Film-Tec stock and the trading activities of petitioners during the periods at issue to conclude that manipulation had occurred. We agree that "rapidly rising prices in the absence of any demand are well-known symptoms of * * * unlawful market operations." *Dlugash v. Securities & Exchange Commission,* 373 F.2d 107, 109 (2d Cir. 1967). Moreover, the Commission also considered other factors, such as the use of nominee accounts and the timing of the bulk sale to Pagel near the end of the Pagel, Inc., tax year, in reaching its conclusions. Based on our review of the evidence in the record as a whole, we conclude that there is substantial evidence to support the Commission's findings.

■ Petitioners argue further, however, that the Commission failed to establish the requisite element of intent, or "scienter." The Commission noted its finding of scienter in a footnote to its opinion. *In re Pagel, Inc., supra,* ¶ 83,909, at 87,752 n. 11. Scienter is the "mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst,* 425 U.S. at 193 n. 12, 96 S.Ct. at 1381 n. 12. In *Aaron v. Securities & Exchange Commission,* 446 U.S. 680, 689–91, 100 S.Ct. 1945, 1951–52, 64 L.Ed.2d 611 (1980), the Supreme Court held that the Commission must prove scienter in actions under sections 10(b) and 17(a)(1), but that it need only prove negligence in actions under sections 17(a)(2) or (3). *See also Securities & Exchange Commission v. MacDonald,* 699 F.2d 47, 50 (1st Cir.1983); *Securities & Exchange Commission v. Holschuh,* 694 F.2d 130, 143 (7th Cir.1982). Although the Commission could have been more explicit in its findings here, we cannot say that its conclusion on this issue is without substantial support in the evidence. Proof of scienter need not be direct but may be "a matter of inference from circumstantial evidence." *Herman & MacLean v. Huddleston,* 459 U.S. 375, 390 n. 30, 103 S.Ct. 683, 691, 74 L.Ed.2d 548 (1983); *Wechsler v. Steinberg,* 733 F.2d 1054, 1058 (2d Cir. 1984); *Rolf v. Blyth, Eastman Dillon & Co.,* 570 F.2d 38, 47 (2d Cir.), *cert. denied,* 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698 (1978). We believe the Commission could reasonably have inferred from the evidence of price movement, trading activity, and other factors that the manipulation was undertaken for the purpose of securing financial and tax benefits for petitioners and thus was intentional.

■ Second, petitioners argue that the Commission impermissibly drew an adverse inference against Pagel and Markus based on their invocation of the fifth amendment privilege against self-incrimination. Although they concede that an adverse inference may be drawn against a party in a civil proceeding, they assert that in this case it was impermissible because there was insufficient evidence independent of their silence to support the Commission's findings.

In determining whether an inference may be drawn from invocation of the fifth amendment, a distinction is made between civil and criminal cases. *Rosebud Sioux Tribe v. A & P Steel, Inc.,* 733 F.2d 509, 521 (8th Cir.), *cert. denied,* 469 U.S. 1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984). In *Baxter v. Palmigiano,* 425 U.S. 308, 318–20, 96 S.Ct. 1551, 1557–59, 47 L.Ed.2d 810 (1976), the Supreme Court held that the fifth amendment privilege against self-incrimination did not forbid drawing adverse inferences from an inmate's failure to testify at his own disciplinary proceedings. The Court noted that the fifth amendment " 'does not preclude the inference where the privilege is claimed by a party to a *civil cause.*' " *Id.* at 318, 96 S.Ct. at 1557 (quoting 8 J. Wigmore, *Evidence* 439

(McNaughton rev. 1961)) (emphasis in original). The *Baxter* Court also found, however, that silence alone would be insufficient to support an adverse decision against one who refuses to testify. *Id.* at 317, 96 S.Ct. at 1557. This principle was reiterated in *Lefkowitz v. Cunningham*, 431 U.S. 801, 809 n. 5, 97 S.Ct. 2132, 2137, 53 L.Ed.2d 1 (1977): "Respondent's silence in *Baxter* was only one of a number of factors to be considered by the finder of fact in assessing a penalty, and was given no more probative value than the facts of the case warranted * *." It is clear that the Commission did not rely solely on Pagel's and Markus' refusal to testify but also, as we have stated above, on the evidence of FilmTec price movements, petitioners' trading activities, and other relevant facts. Furthermore, in earlier proceedings the ALJ chose not to draw an adverse inference against petitioners and still found violations. Consequently, the Commission's inference served only to support already established findings. We conclude, therefore, that the Commission did not err in taking the adverse inference into account when weighing the evidence against petitioners.

■ Petitioners further contend, however, that the Commission's adverse inference was impermissible because it was undermined by Pagel's subsequent acquittal on tax fraud charges. Petitioners request that we take judicial notice of the outcome of the criminal proceeding in view of the fact that the allegations were substantially similar to those in this case. According to petitioners, the adverse inference drawn by the Commission was inaccurate since Pagel testified at the criminal proceeding and was acquitted. Assuming that we may take judicial notice of the outcome of the criminal proceeding, we are not persuaded that the subsequent acquittal retroactively invalidates the inference drawn in an administrative adjudication of securities fraud charges.

Petitioners' third argument is that the Commission erred in approving the ALJ's exclusion of the proffered expert testimony of Donald Pates, a trader of securities in the Minneapolis area. The ALJ sustained the objection to Pates' expert testimony on the ground that testimony regarding customary industry practices, the conformity of petitioners' conduct with those practices, and the proper inferences and legal conclusions to be drawn from the evidentiary facts was unnecessary. The Commission found that the ALJ had not abused his discretion by excluding the testimony, and noted that the ALJ was "highly sophisticated in securities matters with many years of experience in determining issues under the securities laws" and "clearly had the necessary expertise to determine from the evidence whether or not respondents had manipulated the market for [FilmTec stock]." *In re Pagel, Inc., supra,* ¶ 83,909, at 87,753.

■ An administrative agency has some discretion in determining whether to admit expert testimony so long as it does not act arbitrarily. *Yaffe Iron & Metal Co. v. United States Environmental Protection Agency,* 774 F.2d 1008, 1016 (10th Cir.1985); *Alabama Association of Insurance Agents v. Board of Governors of the Federal Reserve System,* 533 F.2d 224, 254 (5th Cir.1976), *vacated in part,* 558 F.2d 729 (5th Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). We do not believe that the ALJ acted arbitrarily here. The record in this case consists of many thousands of pages of documentary evidence and transcripts of the testimony of those who were allowed to testify. There is no reason to believe that the expert's testimony would have added anything to this administrative adjudication directed and decided by a person already knowledgeable in securities regulation matters. Moreover, the Commission's rules of procedure for administrative hearings allow the hearing officer to determine whether to exclude or admit evidence. "The hearing officer shall receive relevant and material evidence, rule upon offers of proof and exclude all irrelevant, immaterial or unduly repetitious evidence." Securities & Exchange Commission Rule 14, 17 C.F.R. § 201.14(a) (1986). We find no arbitrariness or abuse of discretion in the exclusion of the proffered testimony.

■ Finally, petitioners argue that the sanctions imposed are excessive. The Com-

mission's choice of sanctions is not to be overturned unless we find them "unwarranted in law or without justification in fact." *Brickner v. Federal Deposit Insurance Corp.*, 747 F.2d 1198, 1203 (8th Cir. 1984); *see Butz v. Glover Livestock Commission Co.*, 411 U.S. 182, 185–86, 93 S.Ct. 1455, 1457–58, 36 L.Ed.2d 142 (1973). In imposing these sanctions, the Commission considered the overpayments customers made for purchases of FilmTec stock during the first eight days of trading and the lower prices they received on sales in March 1980. The Commission also considered the fact that petitioners previously had been sanctioned, pursuant to an offer of settlement, for violations of customer protection, credit extension, record keeping, and reporting provisions. The Commission could reasonably have concluded that protection of the public interest required the sanctions it imposed, *see Berdahl v. Securities & Exchange Commission*, 572 F.2d 643, 649 (8th Cir.1978). Accordingly, we find no abuse of discretion in the imposition of these sanctions.

The order is affirmed.