559 F.Supp. 1115 (1983)
Joseph B. MORRISSEY, Jr., Plaintiff,
v.
COUNTY TOWER CORP., et al., Defendants.
No. 82-2032C(2).
United States District Court, E.D. Missouri, E.D.
March 9, 1983.
*1116 Thomas J. Guilfoil, Jim J. Shoemake, Guilfoil, Symington, Petzall & Shoemake, St. Louis, Mo., for plaintiff.
Robert D. Rosenbaum, William J. Baer, Gary E. Humes, Arnold & Porter, Washington, D.C., Albert H. Hamel, James M. Byrne, Lashly, Caruthers, Baer & Hamel, St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
Plaintiff brought this action pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa et seq., and 28 U.S.C. § 1331(a). The gravamen of the plaintiff's complaint rests in his allegation that the defendants violated Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14 a-9 promulgated thereunder, 17 C.F.R. § 240 14 a-9, through the dissemination of a proxy statement which both contained false or misleading statements of material fact, and omitted material facts. In this action, the plaintiff seeks an injunction voiding the results of an election held on December 22, 1982 at a Special Meeting of the shareholders of County Tower Corporation. At this meeting, a majority of those holding outstanding shares of County Tower common stock voted to approve the proposals which were embodied in the proxy statement which the plaintiff contends is false and misleading.
This case was tried to the court sitting without a jury. At the close of the plaintiff's case, the defendants moved for dismissal pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, on the ground that upon the facts and the law the plaintiff had shown no right to relief. This motion was granted and judgment was rendered on the merits against the plaintiff. The court having considered the pleadings, the testimony of the witnesses, the documents in evidence and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law as required by Rule 52(a) of the Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff Joseph O. Morrissey, Jr. (hereinafter "Morrissey") is a citizen of the State of Missouri domiciled in St. Louis County, Missouri. On December 22, 1982 Morrissey was elected a director of County Tower at the special meeting of the shareholders.
2. County Tower Corp. (hereinafter "County Tower"), the corporate defendant in this action, is a Missouri Corporation with its principle place of business at 8000 Forsyth Boulevard, Clayton, Missouri. County Tower is a bank holding company registered with the Board of Governors of the Federal Reserve System under the Bank Holding Company Act of 1956, as amended. County Tower owns either directly or indirectly County Bank of House Springs, County Bank of Louisiana, County Bank of Webster Groves, County Bank of Richmond Heights, County Bank of Chesterfield, County Bank of St. Louis, County Bank of Manchester, County Bank of Tower Grove, and two nonbank affiliates, Midwest Investment Advisory Services, Inc. and County Realty Corp.
3. County Tower's common stock is publicly held and is traded in the over-the-counter securities market and is registered pursuant to Section 12 of the Securities Exchange Act of 1934. As of November 15, 1982, there were 1,601,630 shares of County Tower common stock issued and outstanding. By reason of a 5% stock dividend on December 30, 1982, there are, as of December 31, 1982, 1,680,479 issued and outstanding shares of common stock.
4. The 23 individual defendants in this action were members of County Tower's Board of Directors at the time of the filing of this complaint and at the time the November 24, 1982 Proxy statement was disseminated to the shareholders.
5. County Tower came into corporate existence by virtue of a merger between TG *1117 Bancshares Co. and TGB Co. On December 23, 1981 the merger closed, and, on that date TG Bancshares Co. merged in TGB Co., a wholly owned subsidiary of County National Bancorporation; County National Bancorporation changed its name to County Tower Corporation. As a result of this merger, Morrissey exchanged 34,004 shares of TG Bancshares stock for 24,287 shares of County Tower stock.
6. Pursuant to the Plan and Agreement of Merger between County National Bancorporation and TG Bancshares Co., at a Special Meeting of the Board of Directors of County Tower on December 30, 1981, the size of the Board of Directors of County Tower was increased from 16 to 23; the 7 persons elected were directors of TG Bancshares on the date of the aforesaid merger.
7. On or about March 4, 1982, County Tower mailed to each shareholder a proxy statement soliciting proxies with respect to the election of directors at the annual meeting of shareholders to be held March 17, 1982. At that meeting, all of the nominees of the Board of Directors were elected as directors. At that time, Article III, Section 2 of the By-Laws of County Tower provided:
The number of Directors of the corporation shall be such number of its shareholders, not less than twenty-three (23), as from time-to-time shall be determined by a majority of the votes cast at a meeting of the Board of Directors at which a quorum was present, each of whom shall be elected by the shareholder by ballot at the annual shareholders' meeting, for a term of one (1) year, each of whom shall hold office until such Director's successor has been elected and qualified.
On April 21, 1982, the By-Laws were amended by the Board of Directors to provide for one additional director.
8. As early as 1982, several of the individual defendants in this action, began to express a concern that County Tower might be vulnerable to a takeover attempt, which would result in minority shareholders not receiving a fair value for their stock, and which would disrupt the banking business of its subsidiaries. This concern was in part in reaction to Mr. Morrissey's accumulation of County Tower shares, which seemed to demonstrate that any person or company could rapidly accumulate such shares with a view toward seizing control of County Tower under circumstances not necessarily in the best interest of County Tower and all its shareholders. Mr. Morrissey's schedule 13D, filed with the Securities & Exchange Commission in September of 1982, revealed that he had increased his aggregate beneficial ownership of County Tower common stock to approximately five percent of the outstanding shares. In this schedule, Mr. Morrissey stated he had no present intention of seeking control of County Tower.
9. As a result of these concerns, meetings were held to discuss various possible changes in the structure of the Board of Directors. At a meeting of the nominating Committee on March 29, 1982, in addition to discussing further the possibility of adopting certain amendments to the Articles of Incorporation and By-Laws of the Incorporation, Mr. Sanguinet proposed that the committee recommend to the full Board of Directors that Mr. Morrissey be elected as a director. The committee unanimously adopted a resolution making the recommendation to the full Board of Directors. This offer was in response to Mr. Morrissey's expressed interest in sitting on the Board. On or about July 21, 1982, the County Tower's Board of Directors voted to make Morrissey an "advisory director" of County Tower, with the understanding that he may be nominated by the Board as a director at the 1983 Annual Meeting of shareholders. In a letter to the Chairman of County Tower dated August 5, 1982 Morrissey declined that offer, which had been communicated to him by the Chairman of County Tower.
10. On or about September 22, 1982 a committee of Directors was established to consider and study possible changes to County Tower's Articles of Incorporation and By-Laws. From late September to early November 1982, the committee, referred to as the Shareholders Relations Committee, *1118 met five times, and, in consultation with counsel, reviewed possible changes, selected those proposals that seemed most appropriate, and formulated a series of recommendations to present to the full Board of Directors for its consideration.
11. On November 10, 1982 the Board reviewed the proposals of the Shareholders Relations Committee and tentatively decided to recommend them to the shareholders at a special meeting to be held in December, rather than waiting until the next annual meeting scheduled for April of 1983. The Board unanimously recommended the adoption of the proposals; the Board also examined, a copy of portions of preliminary proxy material which was distributed to them at that meeting.
12. This court finds that the plaintiff submitted no evidence to support his contention that it was the defendants' purpose in recommending that a special meeting be held for the consideration of the proposals for the purpose of evading reporting requirements required by the federal securities laws, or to hide the allegedly deteriorating financial condition of County Tower. In fact, on or about November 10, 1982, County Tower mailed to its shareholders its third quarterly report for the period ending September 30, 1982, which disclosed the then-current financial condition of County Tower. The report included, among other things, a consolidated nine months' income statement consolidated balance sheet of County Tower and its subsidiaries for September 30, 1982 and September 30, 1981, and accompanying materials, consisting of four newspaper articles concerning County Tower and a letter signed by defendant Sanguinet.
13. County Tower's financial condition at December 31, 1982 and the results of its operations for the year then ended do not differ materially from the financial information reported to shareholders in the company's third quarter report. The plaintiff was unable to demonstrate that County Tower's financial condition was deteriorating as he alleged in his complaint. In fact as late as December of 1982, Morrissey attempted to buy a substantial amount of County Tower stock. On December 15, 1982, at least one month after this suit was instituted, a letter from Mr. Morrissey was delivered to the trust departments of County Bank of St. Louis and Tower Grove Bank and Trust Company which reads as follows:
I understand that the Trust Department(s) ... holds in a fiduciary capacity a number of shares of County Tower Corp. I will purchase all shares of County Tower Corp. presently held by the Trust Department(s) whether as executor, trustee, co-executor, co-trustee or in some other fiduciary capacity. The present over-the-counter market price is approximately $30.50 per share. I will pay $35.00 per share subject to three conditions. First, I cannot close the sale until I receive the appropriate regulatory approvals. Second, there shall be no change in the Articles of Incorporation and By-Laws of County Tower Corporation (such as are presently proposed) between the date of this letter and closing. Third, I require a response as to the shares held in fiduciary capacities by the Trust Department(s) by 2:00 p.m. on Tuesday, December 21, 1982.
I will be prepared to close any transaction in cash within one week of obtaining regulatory approval.
14. Among the proposals to be submitted to the shareholders at the Special Meeting was a proposal to reduce the size of County Tower's Board of Directors from twenty-three members to nine members. At the November 10, 1982 meeting of the Board of Directors, all 23 of the defendant-directors submitted their resignations, contingent upon and effective as of the time of the shareholders adoption of the proposals which would reduce the size of the Board. The directors had agreed at the October 1, 1982 meeting to submit such conditional resignations in the event they ultimately voted to recommend that the size of the Board be reduced.
15. At the November 10, 1982 Board Meeting, Mr. Sanguinet, at the request of the Board of Directors recommended the *1119 persons to be nominated to the reduced board. At this meeting, the Board adopted Mr. Sanguinet's recommendation. The following persons were recommended by Mr. Sanguinet to serve as nominees for directors to be submitted to the shareholders at the special meeting: Messrs. Eckhardt, Forsyth, Frank, McIlroy, Owen, Peck, Vatterott, Walker and Sanguinet.
16. On November 24, 1982, the Board held a special meeting, during which the Board received and gave final approval to the proxy statement to be submitted to the shareholders.
17. The Notice of the Special Meeting, the Proxy Statement, and a letter from Mr. Sanguinet, were mailed to shareholders on November 24, 1982. Therefore, the shareholders were provided with 28 days' notice of the Special Meeting. Mr. Morrissey received a copy of the letter, Notice, and the Proxy Statement.
18. The Proxy Statement contained two sets of proposed amendments to the Articles of Incorporation and the By-Laws.
19. Proposal No. 1 established new rules governing an effort by a large shareholder or otherwise a "Related Person" of the Company to merge or consolidate County Tower with another entity. The proxy defines "Related Person" as "certain entities that have acquired or obtained control of 10% or more of the Voting Shares of the Company." Under the terms of the proposals, large shareholders seeking to bring about a merger would be required to meet one of several conditions: approval of the business combination by 80 percent shareholder vote; or prior approval of the business combination by two-thirds of the Board; or compliance with certain specified conditions, one of which was using a formula "designed to ensure that any shareholder in the company receives a fair price ... for any stock purchased from him or her in a Business Combination." The proxy further states that under Missouri law two-thirds majority of the outstanding shares of common stock may authorize a sale, unless the articles of incorporation or by-laws require a greater favorable vote. Prior to the approval of this proposal County Tower did not have a provision requiring the approval of a Business Combination by any vote other than that required by Missouri law.
20. Proposal No. 1 also provides that in the case in which vacancies could be filled by a vote of the shareholders, the Board of Directors should be given advance notice of shareholder nominations. In addition, the proposal required two-thirds approval of the outstanding voting shares and two-thirds approval by the Board of Directors prior to the amendment or repeal of certain of the newly adopted by-laws; two-thirds approval by the Board and approval by 80% of the outstanding voting shares was required for the amendment or repeal of the Article relating to the "Approval of Mergers or other Similar Transactions with Related Parties."
21. Proposal No. 2 provided for a classified board and reduced the membership of the Board from 23 to nine. Under the terms of the proposal the Board would be divided into "three classes of director, as nearly equal in number as possible, who would serve staggered three-year terms." The Proxy Statement also provided that, if Proposal No. 2 were adopted, an election of directors would be held at the Special Meeting. The statement identified the nine nominees for the newly constituted Board recommended by management.
22. In addition to setting out the actual proposals, the Proxy Statement disclosed the "purpose of amendments" and the "general effect of amendments." In the Proxy Statement, it is explained that "(t)he primary purpose of the amendments is to discourage attempts by other persons, companies or groups to acquire control of the Company, without negotiation with the Company, through the acquisition of a substantial number of shares of the Company's stock, possibly followed by a forced merger or other business combination in which the remaining shareholders of the Company may not receive a fair price for "their shares. Such a merger may or may not be in the interests of the Company or its shareholders." It is further explained in the *1120 proxy that management was not aware of a present intention of any person or company to make such an effort. However, it is pointed out that the acquisition of a substantial number of shares of the company's stock by Mr. Morrissey "had the effect of forcing management's attention on the possibility that any person or company could rapidly accumulate shares of the Company with a view to a tender offer or other effect to seize control under circumstances not in the best interests of the Company and its shareholders."
23. In addition to setting out the purpose of the proposals, the general effect of the amendments, both positive and negative, are also set out in the proxy statement:
It should be noted that any or all of the proposed amendments might have the effect of entrenching management or of discouraging an attempt to acquire control of the Company that is not approved by a specified vote of the Board. It should be noted that a majority of shareholders might welcome the opportunity to liquidate their holdings and that acquiring companies often offer a premium over the prevailing market price.... To the extent that the proposed amendments have the effect of discouraging an attempt to acquire control, the proposals could be considered to be antitakeover devices that could deter a takeover attempt and entrench management even if the terms of the proposed takeover could have been desirable or beneficial to shareholders.... Shareholders should recognize that adoption of the amendments to the By-Laws could enable a majority of the Company's directors and shareholders to prevent a transaction favored by or favorable to a majority of the directors and stockholders.
Finally, the proxy statement provides an explicit warning with respect to the classification of the Board: "[a] Classified Board would also make it more difficult for minority shareholders to elect a director by means of cumulative voting because fewer directors would be elected at each annual meeting."
24. The November 24, 1982 Proxy Statement disclosed the remuneration of the top five officers of County Tower for the most recent fiscal year. At the time the Proxy Statement was disseminated County Tower's most recent fiscal year was calendar year 1981. During 1982, the remuneration of County Tower's officers and directors was increased only as appropriate to take into account the effects of inflation, as well as the increased responsibilities of certain of the officers and directors.
25. The Special Meeting of Shareholders took place as scheduled on December 22, 1982. The Inspectors of Election reported the following: Proposal No. 1 received 1,267,488 votes or 79.14%[1] for, 190,274 votes or 11.88% against, and 12,188 votes, or .76% abstained; Proposal No. 2 received 1,258,334 votes or 78.7% for, 192,194 votes or 12.00% against, and 19,347 votes or 1.21% abstained. The Inspectors reported that both proposals passed.
26. Following adoption of the proposed amendments, the shareholders elected nine directors to the newly constituted Board. The directors nominated received the following votes according to the Inspectors:

 Nominee Vote
 Earl E. Walker 1,908,414
 J. Gordon Forsyth 1,909,764
 Ben Peck 1,909,764
 L. Carl Owne 1,889,764
 Harlan A. Ackhardt 1,889,764
 Merle M. Sanguinet 1,889,764
 Joseph O. Morrissey, Jr. 1,241,685
 John M. McIlroy 54,364
 Gregory B. Vatterott 88,697
 William A. Frank 84,282

The inspectors declared that Messrs. Frank, Morrissey and Vatterott were elected for a term expiring in April 1983; Messers. Eckhardt, Owen and Sanguinet were elected for a term expiring in April of 1984; and Messrs. Forsyth, Peck and Walker were *1121 elected for a term expiring in April of 1985. The directors elected included eight of the nine candidates recommended by management in the Proxy Statement. In addition, Morrissey was nominated from the floor by his attorney, Mr. Jim J. Shoemake, who held a proxy for Morrissey's spouse, and was elected as one of the then nine directors.

CONCLUSIONS OF LAW
This court has jurisdiction of this case pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331. Plaintiff claims that he is entitled to an injunction voiding the results of the election held on December 22, 1982 because the proxy statement disseminated by the defendants contained false or misleading statements of material fact and omitted material facts in contravention of Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and Rule 14 a-9 promulgated thereunder. Therefore, the question of law presented by this case is whether the proxy statement disseminated to County Tower shareholders was false and misleading, as those terms are defined by the federal securities laws.[2]
Rule 14-9, which is promulgated pursuant to Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) provides:
No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact, or which omits to state material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting on subject matter which has become false or misleading
17 C.F.R. S 240.14 a-9. In order to establish a private cause of action for the violation of Section 14(a) of the Securities Exchange Act, 15 U.S.C. § 78n(a) and Rule 14-9, promulgated thereunder, it is necessary for the plaintiff to establish either the existence of a false or misleading statement, or the omission of a fact and also to demonstrate that the statement or omission is "material." The standard of materiality is objective; a false statement or an omission is material "if there is a substantial likelihood that a reasonable shareholder would consider it important deciding how to vote.... [t]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." TSC Industries, Inc. v. Northway, Inc., 426 U.S. 438, 439, 96 S.Ct. 2126, 2128, 48 L.Ed.2d 757 (1979). In addition to establishing that a false statement or omission is material, a burden also rests on the plaintiff to demonstrate that the proxy statement was an "essential link" in effectuating the corporate action which in turn gives rise to the injury. Mills v. Electric Auto-Lite, 396 U.S. 375, 385, 90 S.Ct. 616, 622, 24 L.Ed.2d 593 (1969); Schlick v. Penn-Dixie Cement Corp., 507 F.2d 374, 383 (2nd Cir. 1974) cert. denied 421 U.S. 976, 95 S.Ct. 1976, 44 L.Ed.2d 467 (1975).
Under the standard of materiality set out by the Supreme Court, it is clear that proxy statements need not set out every argument against a particular recommendation or proposal. The securities laws only prohibit a false or misleading statement of material fact, or the omission of a material *1122 fact. Gollub v. PPD Corp., 435 F.Supp. 564, 567 (E.D.Mo.1977) aff'd 576 F.2d 759 (8th Cir.1978). Several courts have held that the failure to state the motive behind a particular proposal or transaction does not constitute a material omission. "It is well established, however, that for the purposes of the federal securities laws, the actual subjective motives behind a controlling shareholders recommendation of a transaction need not be disclosed, as long as the relevant underlying facts are disclosed." Lewis v. Oppenheimer & Co., 481 F.Supp. 1199, 1204 (S.D. N.Y.1979). See also, Selk v. St. Paul Ammonia Products, Inc., 597 F.2d 635, 639 (8th Cir.1979); Gollub v. PPD Corp., 576 F.2d 759 (8th Cir.1978). Therefore, the "unclean heart of a director is not actionable, whether or not it is `disclosed', unless the impunities are translated into actionable deeds or omissions both objective and external." Stedman v. Storer, 308 F.Supp. 881, 887 (S.D.N.Y.1969).
Applying the above principles to the facts presented by this case, it must be concluded that the plaintiff has failed to show by a preponderance of the evidence[3] that the proxy statement, which the defendants disseminated on November 24, 1982 contained false or misleading statement or omissions of any material fact. Over and above the previous standard, this court also has viewed the evidence in the light most favorable to the plaintiff, and has given the plaintiff the benefit of all reasonable inferences from his evidence and has reached the same factual and legal conclusions. Furthermore, it should be noted that there are very few disputes of material fact; instead, the disagreements arise out of an interpretation of the motives, intentions, and purpose of the actions taken by the defendants. In reality, the plaintiff is not objecting to the absence of any facts in the proxy; instead, his claim rests upon the allegations that the defendants failed to disclose what their true motivation was in making these proposals, and that the defendants failed to describe the proposals in the same manner that the plaintiff would have them characterized.[4]Selk v. St. Paul Ammonia Products, Inc., 597 F.2d at 639. Citing Gollub v. PPD Corp., 576 F.2d at 765. *1123 It is the opinion of this court that the Proxy Statement fairly and accurately disclosed all material information, including the potential negative effects of the various amendments. See Findings of Fact Nos. 22 and 23. The omissions of which the defendant complains are either pieces of information contained in the proxy, or plaintiff's personal characterization of the proposals. See Findings of Fact Nos. 22 and 23. Therefore, it is the conclusion of this court that the defendants did not violate Section 14(a) of the Securities Exchange Act or Rule 14 a-9 through the dissemination of the November 24 Proxy Statement.
The plaintiff's second claim consists of the allegation that the defendants scheduled the Special Meeting of the shareholders at the latest possible date in order to evade the disclosure requirements of Section 14(a) of the 1934 Act, Rule 14 a-3, and Schedule 14A, and also to prevent disclosure of the financial status of County Tower. Under Missouri law, written notice of each shareholder meeting cannot be given less than ten days prior to the date of the meeting. Mo.Rev.Stat. § 351.230.1. Article II § 4 of the by-laws of County Tower contains a similar provision, which provides that in a case of a special meeting notice shall not be delivered less than ten days before the date of the meeting. The shareholders of County Tower received notice of the special meeting 28 days prior to the date it was held. See Findings of Fact No. 17. Under the circumstances, it must be concluded that this length of time was reasonable. Furthermore, the record establishes that the meeting was in fact scheduled on December 22, 1982 due to the defendant's fear of potential takeovers; the defendants did not recommend that a special meeting be held at this time for the purpose of evading any reporting requirements required by the federal securities laws. See Findings of Fact No. 12. Finally, the plaintiff has failed to demonstrate that County Tower's financial condition was deteriorating. See Findings of Fact No. 13. Therefore, it is the conclusion of this court that the scheduling of this meeting did not violate federal or state law, and was not for the purpose of evading disclosure requirement under Section 14(a) of the Securities Exchange Act.
The plaintiff's final claim is that the defendants breached their fiduciary duty by proposing these amendments to the stockholders of County Tower, by scheduling a special meeting for the consideration of these proposals and the election of the members of the board in December of 1982, and by disseminating false and misleading proxy statements to the shareholders of County Tower.
Under Missouri law, once a proposal which calls for the business judgment of the board of directors is ratified by the stockholders, a court will only interfere if the matter complained of is ultra vires, illegal, fraudulent, unfair, or dishonest. Saigh v. Busch, Neidert v. Neidert, 637 S.W.2d 296, 301 (Mo.App.1982), citing Saigh v. Busch, 396 S.W.2d 9, 22 (Mo.App.1965). Under this rule, shareholders may ratify informal or irregular actions of the board, if the action taken was within the corporate powers of the Board. Id. It has already been established that the purpose of these amendments was to discourage attempts by substantial shareholders to gain control of County Tower in a manner unfair to the company's remaining shareholders. See Findings of Fact Nos. 8 and 22. In fact, proposals of a similar nature have passed muster. Elgin National Industries v. Chemetron Corp., 299 F.Supp. 367 (D.Del. 1969). Furthermore, the proxy statement disseminated to the shareholders was neither false or misleading or in contravention of the federal securities laws; the statement warned shareholders of the potential entrenching effects that the proposal might have. See Findings of Fact No. 23. Finally, this court has already concluded that the special meeting was held in a lawful manner and that a sufficient amount of notice was provided to the shareholders of County Tower. Therefore, it must be concluded that the plaintiff has failed to demonstrate that the defendants took any actions that were ultra vires, illegal, fraudulent, or dishonest. Upon the facts of this case, it is the conclusion of the court that the actions proposed by the defendants in the Proxy Statement were lawful and for a proper *1124 business purpose. The decision to recommend the proposals to the shareholders, and actions taken in conjunction with these proposals, including the scheduling of a Special Meeting did not constitute a breach of fiduciary duty on the part of the defendants in this action.
Accordingly, judgment will be entered for the defendants.

ORDER
IT IS HEREBY ORDERED, ADJUDGED, and DECREED, that judgment be and is entered for the defendants on counts I, II, and III of the plaintiff's complaint.
IT IS FURTHER ORDERED that this judgment be and is deemed a final judgment upon this court's express determination that there is no just reason for delay and upon an express direction for the entry of judgment, as required by Rule 54(b) of the Federal Rules of Civil Procedure.
IT IS FURTHER ORDERED that the defendants' counterclaim, which was severed from the trial on the merits pursuant to this order of this court, be and is set for trial on May 9, 1983.
NOTES
[1] The percentages cited in Findings of Fact No. 25 represent the percentage of issued and outstanding shares entitled to vote.
[2] The plaintiff's complaint contains two additional claims. In Count II, the plaintiff alleges that the defendants scheduled the Special Meeting at the latest possible date in order to evade the disclosure requirements of Section 14(a) of the 1934 Act, Rule 14a-3, and Schedule 14 A and to prevent disclosure of the allegedly deteriorating condition of County Tower. In Count III, plaintiff brings a state law claim for breach of fiduciary duty, in which he alleges that the defendants made these proposals in an effort to entrench themselves. The latter two counts will be examined after the plaintiff's claim that defendants violated Section 14(a) and Rule 14a-9 is considered.
[3] This case was dismissed at the close of the plaintiff's case, upon the motion of the defendants, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure. The Rule provides that dismissal is appropriate at this stage in the proceedings if upon the facts and the law the plaintiff has shown no right to relief. In rendering judgment under Rule 41(b), a court is not as limited in its evaluation of the plaintiff's case as it would be on a motion for a directed verdict. "The court is not to make any special inferences in the plaintiff's favor nor concern itself with whether plaintiff has made out a prima facie case. Instead, it is to weigh the evidence, resolve any conflicts in it, and decide for itself where the preponderance lies." 9 Wright & Miller, Federal Practice and Procedure, § 2371 P. 233.
[4] More specifically, the plaintiff contends that the November 24th Proxy Statement omitted the following facts in contravention of the Federal Securities Laws: one, the deteriorating financial condition of County Tower; two, the purpose and effect of the proposed amendments, which would be to entrench management; three, the unconstitutionality of the Missouri statute which permits classification of Boards of Directors; and finally, the remuneration of the Directors for 1982 fiscal year. As previously stated, the plaintiff failed to establish that County Tower's financial situation was deteriorating. See Findings of Fact No. 13. Furthermore, the potential entrenching effect of these proposals was clearly set out in the Proxy Statement. See Findings of Fact Nos. 22 and 23. In addition, the defendant complied with the federal regulation which require only the disclosure of remuneration for executive officers or directors "during the registrant's last fiscal year." 17 C.F.R. § 229.402. See Findings of Fact No. 24. Finally, the plaintiff contends that it was false and misleading for the defendants to omit from the proxy statement that the classification of the Board violated the Missouri Constitution. It was by no means established that Section 351.315 of the Missouri General and Business Corporation Law is violative of the Missouri Constitution when defendant disseminated the proxy statement on November 24. Even today, this fact has not yet been established and remains an allegation on the part of the plaintiff. In light of the fact that this issue presents a question of state law, which is more appropriately resolved by a state court, this court will abstain from considering this issue. However, this court does hold that the defendants did not violate the federal securities laws by failing to include in the proxy statement the questionable claim that classification of boards violate Article XI, Section 6 of the Missouri Constitution.