Barbara SCHREIBER, Appellant,

v.

BURLINGTON NORTHERN, INC., R–H Holdings Corporation and The El Paso Company, Travis Hubert Petty, William V. Holik, Jr., M.R. Engler, Jr., W.C. Henderson, R.S. Morris, M.A. Ehrlich, A.M. Derrick, Richard L. McConn, D.J. MacIver, Jr. and L.M. Varen Kamp, Howard Boyd, Williard F. Rockwell, Jr., W.D. Noel, L. Emory Katzenbach, Ben F. Love, Kenneth Rush, J.R. Hubbard.

No. 83–1504.

United States Court of Appeals, Third Circuit.

Argued Feb. 28, 1984.

Decided April 2, 1984.

Wilson, Whittington & Aulgur, Thomas D. Whittington, Jr., Judith N. Renzulli, Wilmington, Del., for appellant; Irving Bizar (argued), Judith Rinearson, Pincus, Ohrenstein & Bizar, New York City, of counsel.

Morris, Nichols, Arsht & Tunnell, A. Gilchrist Sparks, III, Lawrence A. Hamermesh, Wilmington, Del., for Burlington Northern Inc. and R-H Holdings Corp.; Fried, Frank, Harris, Shriver & Jacobson, Marc P. Cherno (argued), Stephen D. Alexander, Stuart A. Blander, New York City, of counsel.

Potter, Anderson & Corroon, Robert K. Payson (argued), Wilmington, Del., Wachtell, Lipton, Rosen & Katz, New York City, for The El Paso Co. and The El Paso Directors; Mudge, Rose, Guthrie & Alexander, New York City, of counsel.

---

Before ADAMS, SLOVITER, Circuit Judges, and TEITELBAUM, District Judge.*

## OPINION OF THE COURT

ADAMS, Circuit Judge.

Barbara Schreiber, a shareholder of El Paso Gas Company (El Paso), brought this action under § 14(e) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(e) (1976) (the Williams Act) after she lost the opportunity to profit from a hostile tender offer by Burlington Northern, Inc. (Burlington)[1] when the offer was rescinded and a friendly but less lucrative offer was substituted. The district court dismissed her complaint, holding that she failed to state a claim for violation of § 14(e) because she alleged no injury resulting from deception. *Schreiber v. Burlington Northern, Inc.*, 568 F.Supp. 197, 201–04 (D.Del.1983). While we are troubled by some of the conduct averred in the complaint, we agree with the district court that Schreiber's alleged injuries are not actionable under the Williams Act. Accordingly, we affirm.

### I.

In late 1982, having purchased over one-half million shares of El Paso stock in the open market, Burlington decided to complete its takeover of El Paso by making a tender offer for 25.1 million shares at $24 per share (the December tender offer). Deeming the offer a hostile one, El Paso management countered with numerous defensive measures. But El Paso shareholders reacted favorably, fully subscribing to the offer by the December 30, 1982 deadline.

Burlington, however, never accepted those tendered shares. Instead, after negotiations with El Paso management, Burlington announced on January 10, 1983 the terms of a new and friendly takeover agreement. Pursuant to the new agree-

1. Burlington used a wholly owned subsidiary, R-H Holdings Corp., to execute the details of the takeover. In this opinion, Burlington and R-H will be referred to jointly as Burlington.

ment, Burlington undertook to: (1) rescind the December tender offer; (2) substitute a new tender offer for only 21 million shares, at $24 per share (the January tender offer); and (3) recognize "golden parachute"[2] contracts between El Paso and four of its officers. By February 8, more than 40 million shares were tendered in response to Burlington's January offer, and the takeover was completed.

For shareholders like Barbara Schreiber, who tendered in response to the December offer, Burlington's withdrawal of that offer proved costly. The January offer was greatly oversubscribed, and consequently those shareholders who re-tendered were subject to substantial proration. Seeking redress, Schreiber filed suit on behalf of herself and similarly situated shareholders, alleging that Burlington, El Paso, and members of the El Paso board violated § 14(e)'s prohibition of "fraudulent, deceptive, or manipulative acts or practices ... in connection with any tender offer." She claims that Burlington's willful breach of the December tender offer was a manipulative distortion of the market for El Paso stock. Schreiber also alleges that in the January offer Burlington failed to disclose the golden parachutes and the fact that El Paso management finally approved the takeover because of the favorable arrangements negotiated with Burlington. Plaintiff thus claims that this January nondisclosure was a deceptive act forbidden by § 14(e).

Ruling on defendants' motions under Fed.R.Civ.P. 12(b)(6), the district court held that neither of Schreiber's theories of recovery was legally sufficient and dismissed the suit on June 27, 1983. This appeal followed.

## II.

Schreiber's first theory of recovery—that Burlington engaged in manipulation when it cancelled the December tender offer—seeks to convert an arguable breach of contract into a violation of the Williams Act. The district court rejected this effort, holding that § 14(e) proscribes only acts that artificially affect market price through deception.

The courts of appeals are divided as to whether deception is a necessary element of the manipulative acts prohibited by § 14(e). In the first appellate decision directly to address this point, the Sixth Circuit held in *Mobil Corp. v. Marathon Oil Co.*, 669 F.2d 366 (6th Cir.1981), that an option granted by a target company to a friendly bidder in order to block a hostile takeover attempt—a "lock-up" option—is a manipulative act within the scope of § 14(e), despite the lack of any deception. Since *Mobil*, however, the Second Circuit has twice rejected efforts by hostile bidders to use § 14(e) to attack arrangements similar to the lock-up option. *Data Probe Acquis'n. Corp. v. Datalab, Inc.*, 722 F.2d 1 (2d Cir.1983); *Buffalo Forge Co. v. Ogden Corp.*, 717 F.2d 757 (2d Cir.1983). Both *Data Probe* and *Buffalo Forge* hold that Williams Act manipulation must involve misrepresentation—that is, the omission or misstatement of material facts.

We believe that the Second Circuit's position, requiring some form of misrepresentation, represents a more accurate view of the Williams Act. As the legislative history and subsequent judicial interpretation of the Williams Act make clear, § 14(e) was not intended to create a federal cause of action for all harms suffered because of the proffering or the withdrawal of tender offers. Rather, § 14(e) was en-

---

**2.** So-called "golden parachutes" generally provide multi-year benefits to high level executives of a target company after a takeover if they are discharged without cause or downgraded by the new management. As described in the Schedule 14D–9 filed by El Paso with the Securities and Exchange Commission on January 12, 1983, the "employment agreements" with the four officers provided for their "continued employment with the Company in their current positions and at not less than their current salary

levels" for periods of either three or five years. App. at S–29 to S–30. The Schedule 14D–9 also disclosed that El Paso's Deferred Compensation Plan had been amended "to provide that for the purposes of such Plan a participant shall be deemed to have retired at the instance of the Company if his duties as a director, officer or employee of the Company have been diminished or curtailed by the Company in any material respect." App. at S–29.

acted principally as a disclosure statute, designed to insure that fully-informed investors could intelligently decide how to respond to a tender offer.[3]  Considered in light of this philosophy of disclosure, withdrawal of the December offer did not violate § 14(e) since Burlington disclosed to the shareholders and to the general public the acts that allegedly constitute a breach of contract.  In the analogous context of SEC Rule 10b–5, 17 C.F.R. § 240.10b–5 (1983), the Supreme Court has restricted the meaning of "manipulative device" to conduct "intended to mislead investors by artificially affecting market activity." *Santa Fe Ind. v. Green,* 430 U.S. 462, 477, 97 S.Ct. 1292, 1302, 51 L.Ed.2d 480 (1977); *see also Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 199, 96 S.Ct. 1375, 1383, 47 L.Ed. 2d 668 (1976).  That narrow definition of manipulation reinforces our view that Burlington complied with § 14(e) by fully disclosing its withdrawal of the December offer.

Although we share the Sixth Circuit's concern about defensive strategies "expressly designed" to "artificially affect normal healthy market activity," *Mobil, supra,* 669 F.2d at 374, we cannot join that court's open-ended notion of manipulative acts.  To be sure, in drafting § 14(e) Congress chose to prohibit not only "fraudulent" and "deceptive" acts or practices, but also the "manipulative" ones, and therefore arguably sought to reach a broader range of conduct than mere misrepresentation. *See Mobil, supra,* 669 F.2d at 376–77; *see also* Note, *Target Defensive Tactics as Manipulative Under Section 14(e),* 84 Col.L.

Rev. 228, 237–8 (1984).  But if taken at face value, there is a danger that the *Mobil* holding would transform all decisions by bidders or by target management that affect a tender offer contest into "artificial" influences.[4]  Absent a requirement of deception, the Williams Act would mandate that the federal courts supervise the substantive fairness of practically all tender offers.  Mindful of the Supreme Court's instruction in *Santa Fe* that we should be reluctant to federalize state corporate law, 430 U.S. at 479, 97 S.Ct. at 1304, we decline to adopt *Mobil*'s expansive view of § 14(e) and hold that deception is an essential element of a manipulative act.

■ Schreiber's second theory of recovery—that Burlington failed to disclose the golden parachutes and the fact that such favors persuaded El Paso management to grant approval of the January offer—does incorporate a claim of deception.  As the district court correctly recognized, however, the alleged January nondisclosure was not causally linked to Schreiber's damages.  The losses she sustained were the result of Burlington's decision to cancel the December offer, a decision unaffected by Burlington's alleged nondisclosure in the January offer.  Even if Burlington had made full disclosure in the January offer, this information would have made no difference to shareholders like Schreiber, whose injury had already been caused by the December rescission.  Lacking a causal link between the alleged misrepresentation and the injuries, Schreiber's second theory also fails.

---

**3.** H.R.Rep. No. 1711, 90th Cong., 2d Sess. 11 (1968) U.S.Code Cong. & Admin.News 1968, pp. 2811, 2813 (the Williams Act was "designed to make the relevant facts known so that shareholders have a fair opportunity to make their decisions"); S.Rep. No. 550, 90th Cong., 1st Sess. 3 (1967).  *See Edgar v. Mite Corp.,* 457 U.S. 624, 639, 102 S.Ct. 2629, 2639, 73 L.Ed.2d 269 (1982); *Piper v. Chris-Craft Industries,* 430 U.S. 1, 31, 97 S.Ct. 926, 944, 51 L.Ed.2d 124 (1977) (the Williams Act "was designed solely to get needed information to the investor"); *Rondeau v. Mosinee Paper Corp.,* 422 U.S. 49, 58, 95 S.Ct. 2069, 2075, 45 L.Ed.2d 12 (1975).

**4.** For scholarly criticism of the broad reach of the *Mobil* holding, see, e.g., Prentice, Target

Board Abuse of Defensive Tactics: Can Federal Law Be Mobilized to Overcome the Business Judgment Rule?  8 J. of Corp.Law. 337, 353–58 (1983); Profusek, Tender Offer Manipulation: Tactics and Strategies After Marathon, 36 Sw. L.J. 975, 991–95 (1982); Note, *The Future of Lock-Ups After Mobil Corp. v. Marathon Oil,* 27 St. Louis U.L.J. 261, 281–82 (1983); Note, "Lock-Up" Enjoined Under Section 14(e) of Securities Exchange Act, 12 Seton Hall L.Rev. 881, 891–95 (1982).  *But see* Target Defensive Tactics, *supra,* 84 Col.L.Rev. at 252–62; Note, Section 14(e) of the Williams Act: Can There Be Manipulation with Full Disclosure or Was the Mobil Court Running on Empty?, 12 Hofstra L.Rev. 159, 171–80 (1983).

## III.

Our decision today by no means constitutes an endorsement of the conduct which the complaint attributes to the defendants. Of special concern to us are Schreiber's averments that El Paso management breached its fiduciary duty to stockholders when it negotiated such self-serving arrangements as the golden parachutes. Nonetheless, in the wake of *Santa Fe's* instruction that "once full and fair disclosure has occurred, the fairness of the transaction is at most a tangential concern of the statute," 430 U.S. at 477–78, 97 S.Ct. at 1302–03, we are constrained to hold, until Congress directs otherwise, that shareholders like Schreiber must rely on the remedies provided by state law.[5]

Accordingly, the judgment of the district court will be affirmed.

**5.** Currently pending in the Delaware Court of Chancery is a certified class action on behalf of the same class that Schreiber seeks to represent here. *Gilbert & Steiner v. The El Paso Co. and Burlington Northern Inc.* (Del.Ch.Consol.Civ.Act.

Nos. 7075 & 7079). The plaintiffs in that case assert under state law substantially the same claims for breach of contract and breach of fiduciary duty that Schreiber presses before us here.