**LOWELL H. LISTROM & COMPANY, INC., Petitioner,**

v.

**SECURITIES AND EXCHANGE COMMISSION, Respondent.**

No. 86–1130.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 10, 1986.

Decided Oct. 21, 1986.

---

* The HONORABLE WILLIAM C. HANSON, Senior District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

Wesley R. Jennings, Kansas City, Mo., for petitioner.

Martha H. McNeeley, Washington, D.C., for respondent.

Before ARNOLD, Circuit Judge, BRIGHT, Senior Circuit Judge, and FAGG, Circuit Judge.

FAGG, Circuit Judge.

Lowell Listrom & Company (Listrom) petitions for review of two portions of a Securities and Exchange Commission (SEC) order affirming disciplinary action taken against Listrom by the National Association of Securities Dealers (NASD). Listrom was censured and fined in connection with three public securities offerings for violating recordkeeping and sales confirmation requirements and for extending credit to its customers in two of the offerings. We affirm.

The securities transactions involved were structured as "best efforts" subscription stock offerings. Using this method of sale, persons were asked to commit to purchase a given number of shares by completing a subscription agreement contained in the preliminary stock offering circular and sending it with appropriate payment to either Listrom or a designated escrow agent. Payments were held by the escrow agent

until a sufficient minimum number of shares were presold to permit the offering to go forward. At closing, securities were issued to the subscribers or their nominees by the escrow agent. Listrom received a commission from the issuer based upon the number of shares for which it arranged subscription purchases.

Not all purchasers followed the subscription procedure outlined in the circular and Listrom actually processed subscription orders in two ways, keeping distinct types of sales records for each. For purchasers who directed their orders to Listrom unaccompanied by payment, the "confirmation method" was used. Under this procedure, complete internal accounting records of the customer account and sale were kept and written sale confirmations requesting payment were sent to the subscribers. These practices were not challenged by the SEC.

For individuals who sent a completed subscription agreement together with their payment the "subscription method" was followed. Listrom photocopied the completed agreement and check for its records and forwarded to the escrow agent the subscription documents with appropriate funds. No other records of account were kept and no written confirmations were sent to the subscription method purchasers. The SEC challenged these practices as violative of agency rules obligating Listrom as a broker-dealer to make and maintain current records of its securities transactions and to provide customers with details of sales transactions in a written confirmation. *See* 17 C.F.R. § 240.17a–3 (rule 17a–3 recordkeeping requirements); 17 C.F.R. § 240.10b–10 (rule 10b–10 confirmation requirements).

At the time the offering closed, Listrom had arranged several orders for which it had not then received payment. To ensure an adequate supply of available shares, Listrom correspondingly increased the number of shares ordered for its own account, paid for the additional shares with its own funds, and later transferred the securities to particular customers after payments were received. Listrom did not cancel outstanding customer orders on its own books prior to purchase of the additional securities. When the transfer was made following payment, the transaction was not shown as a resale on Listrom's records. This practice was objected to by the SEC as a violation of section 11(d) of the Securities Exchange Act of 1934 which generally prohibits a broker-dealer from extending customers credit to buy securities when the broker-dealer also participated during the offering in the distribution of the same securities to the public. *See* 15 U.S.C. § 78k(d).

Listrom does not dispute the validity or general applicability of this administrative scheme. Listrom argues instead that the particular transactions for which it was disciplined are not subject to these requirements.

*Recordkeeping and Confirmation Violations*

Listrom characterizes the subscription method of securities offering as merely a marketing tool which establishes no customer relationship between Listrom and the buyer when the sale is made through the subscription agreement rather than through Listrom itself. Listrom contends it committed no recordkeeping or confirmation violations because rules 17a–3 and 10b–10 speak only to transactions with "customers." Since subscription purchasers were not Listrom's customers, neither detailed accounting records nor written confirmations of these purchases were required. We do not agree.

Listrom's defense to the recordkeeping and confirmation violations hinges on interpretation of the word "customer" in rules 17a–3 and 10b–10. Listrom maintains subscription buyers who had no established account or business relationship with Listrom were merely "investors" and not Listrom customers to whom the rules apply. The SEC reads the term customer more broadly and has interpreted the recordkeeping and confirmation rules to encompass subscription transactions of the general type arranged by Listrom in this case. *See In re J.A. Hogle & Co.*, 36 S.E.C. 460, 464

(1955). The SEC notified Listrom during the course of these offerings of its interpretation to that effect.

■ On judicial review, an agency's interpretation of its own regulations is entitled to substantial deference when the interpretation is consistent with the language of the authorizing statute and the purpose of the regulation. *See United States v. Larionoff,* 431 U.S. 864, 872–73, 97 S.Ct. 2150, 2155–56, 53 L.Ed.2d 48 (1977); *Moore v. Custis,* 736 F.2d 1260, 1262 (8th Cir. 1984); *First Nat'l Bank v. National Bank,* 667 F.2d 708, 711–12 (8th Cir.1981). Bearing in mind the underlying purposes of the federal securities laws—to promote disclosure of information, protect the investing public, and facilitate compliance—we conclude the SEC's interpretation is correct that the recordkeeping and confirmation rules apply to subscription method sales.

### Extension of Credit Violation

Listrom argues the circumstances under which it purchased additional shares to meet subscriber requests were not an extension of credit in violation of section 11(d)(1), 15 U.S.C. § 78k(d). In support of this argument Listrom points out it made the purchases with its own funds, took title in its own name, and was not obligated to later transfer the shares to customers.

The SEC found the purchase of additional securities was actually on behalf of customers who had ordered stock but failed to make payment and the securities were in fact transferred to those customers after they reimbursed Listrom. Based upon the finding the purchases were actually made for the customers' accounts, the SEC concluded this practice constituted an extension of credit within the meaning of section 11(d)(1).

■ Our standard of review in the case of this violation is two-fold. First, the SEC's factual findings are conclusive if supported by substantial evidence. 15 U.S.C. § 78y(a)(4); *see also Capital Funds, Inc. v. SEC,* 348 F.2d 582, 585 (8th Cir. 1965). Second, the interpretation by the SEC of the intended coverage of section 11(d)(1) is a question of law which we may determine de novo. *First Nat'l Bank,* 667 F.2d at 711. When interpretation of a statute has been made by the same agency charged with its execution, that interpretation "should be followed unless there are compelling indications that it is wrong * * *." *Red Lion Broadcasting Co. v. FCC,* 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969).

■ There is substantial evidence in the record to support the SEC's findings concerning the occurrence and purpose of Listrom's reimbursement procedure. We also find reasonable the SEC's interpretation the procedure was an extension of credit of a type contemplated by section 11(d)(1). *See Investment Co. Institute v. Camp,* 401 U.S. 617, 626–27, 91 S.Ct. 1091, 1097, 28 L.Ed.2d 367 (1971). Listrom's related argument that the subscription method of offering is not a sale of securities for section 11(d)(1) purposes is without merit.

■ Finally, Listrom argues for the first time on appeal that its extension of credit fits within an exemption, found in 17 C.F.R. § 240.11d1–1, from the section 11(d)(1) prohibition. Even should the facts here be appropriate for such an exemption, we decline to consider it since it was not raised in either the NASD or SEC proceedings and Listrom has put forth no reasonable ground for the failure to do so. *See* 15 U.S.C. § 78y(c)(1).

We find no error in the disciplinary rulings under review. Accordingly, the order of the SEC is affirmed.