26 F.3d 126
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that no party may cite an opinion not intended for publication unless the cases are related by identity between the parties or the causes of action.
FIRST GAURANTOR SECURITIES, INC.; Joseph Philip Spallo, Petitioners,
v.
SECURITIES AND EXCHANGE COMMISSION, Respondent.
 No. 93-3398.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: April 19, 1994.
Filed: May 18, 1994.
 
 Before MAGILL, Circuit Judge, BRIGHT, Senior Circuit Judge, and BEAM, Circuit Judge.
 PER CURIAM.
 
 
 1
 First Guarantor Securities, Inc. (FGS) and its owner and president, Joseph P. Spallo, petition for review of a Securities and Exchange Commission (SEC) order sustaining disciplinary action taken against them by the National Association of Securities Dealers, Inc. (NASD). We affirm.
 
 
 2
 FGS, an introducing broker, joined the NASD[1] in 1986. The NASD conditioned FGS' membership on a Restriction Agreement that Spallo executed June 2, on FGS' behalf. This agreement included twelve specific restrictions on operations. In paragraph 10, FGS agreed "[t]o refrain from a conversion to an alternate service bureau, clearing facility, or clearing broker/dealer without prior consent from the District No. 4 Office following a submission of a written plan of conversion." More generally, FGS agreed "to not modify in any respect its business activities or method of operation in a manner inconsistent with [the Restriction Agreement] without first notifying District Committee No. 4 and receiving its written approval."
 
 
 3
 In July 1990, Ameritrade bought out Securities Settlement Corporation, FGS' clearing broker. Spallo allowed Securities Settlement to transfer FGS' business to Ameritrade, allegedly with the understanding that the NASD cleared the transfer and that it did not change FGS' clearing broker under the NASD By-Laws, its Restriction Agreement, or the NASD Rules of Fair Practice. In May 1991, after the NASD learned of the change to Ameritrade, it issued a letter of caution[2] to Spallo. The letter cited FGS' failure to apply for and obtain the requisite approval required by the Restriction Agreement before changing clearing brokers as a violation of Schedule C, Part I, Section 1(e) of the NASD By-Laws, NASD Manual (CCH) p 1753, at 1533. It also cited FGS' failure to file promptly an amendment to its broker-dealer registration form (Form BD) regarding its change in clearing brokers, in violation of Article III, Sec. 1(d) of the NASD Code of Procedure, which requires members to keep their membership applications "current at all times." NASD Manual (CCH) p 1131, at 1151.
 
 
 4
 On August 5, 1991, Spallo changed FGS' clearing broker again by entering into an agreement with First Southwest. First Southwest began clearing trades for FGS on August 23, 1991. However, Ameritrade continued to clear some of FGS' trades until completion of the conversion in early September 1991. Again, Spallo failed to submit a written plan of conversion as required by paragraph 10 of the Restriction Agreement and to obtain the NASD's consent before changing clearing brokers. Spallo also failed to file an amended Form BD to reflect the change until forty-nine days after entering into the agreement with First Southwest.
 
 
 5
 On September 23, 1991, the NASD received FGS' amended Form BD, dated September 20. The District Business Conduct Committee (DBCC) of the NASD filed a complaint in December 1991 against Spallo and FGS, alleging they violated Schedule C, Part I, Sec. 1(e), NASD Manual (CCH) p 1753, at 1533, by changing its clearing broker in contravention of its Restriction Agreement; violated Article III, Sec. 1(d) of the NASD By-Laws, NASD Manual (CCH) p 1131, at 1151, by failing to promptly amend its Form BD; and violated Article III, Sec. 1 of the NASD's Rules of Fair Practice, NASD Manual (CCH) p 2151, at 2014, which requires members to "observe high standards of commercial honor and just and equitable principles of trade" while conducting their business.
 
 
 6
 After a hearing, the DBCC censured FGS and Spallo and imposed a fine of $2,500.00 for violating the Restriction Agreement. With regard to the Form BD violation, the decision acted only as a letter of caution for the failure to promptly amend FGS' Form BD. The NASD affirmed the action taken against Spallo and FGS. Thereafter, the SEC reviewed the record de novo, and affirmed the NASD's findings and imposition of sanctions.
 
 
 7
 On appeal, we must consider whether the SEC's findings are supported by substantial evidence on the record as a whole. Pagel, Inc. v. S.E.C., 803 F.2d 942, 945 (8th Cir. 1986). "Our task is not to weigh the evidence, 'but only to determine that there is in the record "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." ' " Id. We accord substantial deference to an agency's interpretation of its own regulations when the interpretation is consistent with the language of the authorizing statute and the purpose of the regulation. Lowell H. Listrom & Co. v. S.E.C., 803 F.2d 938, 941 (8th Cir. 1986).
 
 
 8
 Spallo first contends that the NASD had notice of his intent to change clearing brokers because he orally informed several NASD examiners of his intent to do so. However, paragraph 10 required submission of a written conversion plan and prior consent from the NASD. The NASD's May, 1991 letter of caution to Spallo and FGS citing the earlier failure to advise in writing of a change in clearing brokers confirms that understanding of the rule.
 
 
 9
 Spallo also asserts that he filed a timely amendment to FGS' Form BD. Spallo contends that the NASD received FGS' amended Form BD within thirty days because FGS' clearing agreement with Ameritrade terminated, at the earliest, on August 23, 1991, when First Southwest first began settling trades for FGS. However, Item 8 of Form BD requires disclosure of "arrangements" with clearing brokers or dealers. Because Spallo signed the clearing arrangement with First Southwest on August 5, 1991, the NASD's thirty-day time limit must be measured from that date. The NASD did not receive FGS' amended Form BD, however, until forty-nine days after Spallo executed the clearing agreement. Furthermore, the NASD stated that its decision regarding the late amendment would act only as a letter of caution to Spallo and FGS.
 
 
 10
 Finally, Spallo asserts that neither a Restriction Agreement violation, nor a failure to comply with registration or reporting requirements, violates Article III, Sec. 1 of the NASD Rules of Fair Practice. The SEC, however, has consistently held that a violation of a Restriction Agreement constitutes a violation of Article III, Sec. 1 because the NASD conditions membership on restriction agreements in order to protect the investing public. See, e.g., Sacks Investment Co., Inc., Exchange Act Release No. 32,436, 54 SEC Dock. 784 (June 9, 1993); First Choice Securities Corp., Exchange Act Release No. 31,089, 52 SEC Dock. 1378 (Aug. 25, 1992); Osborne, Stern and Co., Inc., Exchange Act Release No. 31,211, 52 SEC Dock. 2209 (Sept. 22, 1989). The SEC has also held that a failure to comply with registration and reporting requirements constitutes a violation of Article III, Sec. 1 of the NASD Rules of Fair Practice. See Jay Frederick Keeton, Exchange Act Release No. 31,082, 52 SEC Dock. 1322, 1328-30 (Aug. 24, 1992). We have carefully reviewed Spallo's remaining arguments and conclude they lack merit. We conclude that substantial evidence on the record as a whole supports the SEC's findings. Accordingly, the SEC's order is affirmed.
 
 
 
 [1]
 The NASD is registered with the Commission as a securities association pursuant to Sec. 15A of the Exchange Act, 15 U.S.C. Sec. 78o- 3, and is responsible, subject to Commission oversight, for self- regulation of its members. The NASD District Business Conduct Committees are authorized to bring disciplinary proceedings against members for violations of the NASD's rules
 
 
 [2]
 A "letter of caution" is an informal action with respect to a violation that is not included in the records of the NASD's Central Registration Depository and is not required to be included on a broker-dealer's Form BD or on an individual representative's Form U-4. A letter of caution may be taken into consideration by the NASD, however, in a subsequent disciplinary proceeding if the violation is repeated